# EXHIBIT A

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

WALTER GASTALDI, an individual,           )
DANIEL FISHER, an individual, Mark        )
MOSES, an individual, and KIMBERLY        )
JONES, an individual, *et al.*,           )
                                          )
        Plaintiffs,              )
                                          )
      v.                           )    Case No. 08-62076-CIV-ALTONAGA
                                          )    Magistrate Stephen T. Brown
                                          )
SUNVEST COMMUNITIES USA, LLC,             )
a Florida limited liability company, and  )
E.W. SUNVEST DEVELOPMENT,                 )
LLC, a Delaware limited liability         )
company, and IMG Academies, LLP,          )
a Florida limited liability partnership,  )
d/b/a IMGA,                               )
                                          )
        Defendants.              )

---

## REBUTTAL EXPERT REPORT
of
### LOUIS G. DUDNEY, CPA

October 30, 2009

## Table of Contents

I.      Introduction...................................................................................................1

II.     Qualifications.................................................................................................1

III.    Summary of Rebuttal Opinions .....................................................................3

IV.     Summary of Mr. O'Rourke's Damage Analysis.............................................3

V.      Mr. O'Rourke failed to properly consider or analyze the general market declines which occurred for condominiums in the Orlando area and the impact those general market declines had on the Plaintiffs' claimed damages.  Improperly, Mr. O'Rourke assumes that the entirety of the decline in value of the Purchased Condos is attributable to the Defendants' actions despite substantial evidence to the contrary. As a result, Mr. O'Rourke significantly overstates damages. ........................5

VI.     Mr. O'Rourke inappropriately applies the standard of actual damages under his FDUTPA damage theory and overstates damages...........................................8

VII.    Mr. O'Rourke inappropriately applies the standard of actual damages under his fraudulent inducement damage theory and overstates damages. ......................10

VIII.   Mr. O'Rourke inappropriately applies the standard of actual damages under his conversion and civil theft damage theory and overstates damages. ..................13

IX.     Mr. O'Rourke improperly calculates Plaintiffs' total expenditures....................15

X.      Mr. O'Rourke assumes that the Trial Plaintiffs will repay all mortgage obligations in full.  However, I note that certain information has been produced, which is inconsistent with this assumption. ..................................................................18

XI.     Documents and Information Considered .........................................................23

XII.    AlixPartners Compensation ...........................................................................23

XIII.   Additional Analysis and Demonstrative Aids.................................................23

## I.     Introduction

Walter Gastaldi, Daniel Fisher, Mark Moses, and Kimberly Jones, *et al.*, (collectively "Plaintiffs") filed an amended complaint against Sunvest Communities USA, LLC, and E.W. Sunvest Development, LLC (collectively "Sunvest") and IMG Academies, LLP d/b/a IMGA ("IMGA") (collectively "Defendants") seeking damages related to alleged violations of Florida's Deceptive and Unfair Trade Practices Act, Fraudulent Inducement, and Conversion and Civil Theft.[1]  Select Plaintiffs are party to the first trial group ("Trial Plaintiffs").[2]

I have been retained by counsel for IMGA to provide expert rebuttal analysis and testimony regarding the reports of the Plaintiffs' experts including the report and analysis of Michael F. O'Rourke, CPA ("Mr. O'Rourke") dated September 14, 2009, as revised by Mr. O'Rourke's October 19, 2009 "revision" to his report.

## II.     Qualifications

I am a Managing Director in the professional services firm AlixPartners, LLP ("AlixPartners"). My professional experience covers broad types of operational, financial, valuation, litigation, bankruptcy and management consulting engagements, including financing, mergers and acquisitions, damages analysis, lost profit determinations, valuations, solvency determinations, debtor advisory assistance, credit advisory assistance, and corporate investigations.

I have consulted with companies in a number of industries including, but not limited to, real estate, financial services, professional services, insurance, specialty chemicals, entertainment, telecommunications, manufacturing, construction, energy, and consumer products.    In performing engagements in these industries, I have analyzed economic, financial and accounting issues and testified in federal civil, criminal and bankruptcy courts, state courts as well as American Arbitration Association hearings and state regulatory proceedings as an expert witness. I have been qualified as an expert witness on damages issues by federal courts, state courts, and arbitration panels on numerous occasions.

---

[1] Amended Complaint dated April 24, 2009.
[2] Table 3 below contains a list of these Plaintiffs and their corresponding units.

Prior to joining AlixPartners, I was a Partner in the Financial Advisory Services Group of PricewaterhouseCoopers.   I hold a Bachelor of Business Administration with a major in accounting from the College of William & Mary and am a Certified Public Accountant.  I am a member of the Illinois Society of Certified Public Accountants, the American Institute of Certified Public Accountants, the American Bankruptcy Institute, and the Licensing Executives Society.

Exhibit 1 contains my curriculum vitae, a listing of testimony that I have provided in the last four years, and a listing of publications I authored within the last ten years.

The rebuttal of Plaintiffs' opinions presented in this report is based on my analysis of the available information and my experience, education, and expertise as a financial consultant.

As part of performing my analysis, I utilized a team of professionals who worked under my direction and control.  The rebuttal opinions expressed herein are subject to change based upon any additional discovery related to this case or information that I may receive after the date of this report.

I will update this rebuttal report, as appropriate, based on any additional information provided. For purposes of my analysis, and as is common practice for rebuttal damages experts, I have assumed liability.

### III.   Summary of Rebuttal Opinions

    **A.**    **Mr. O'Rourke failed to properly consider or analyze the general market declines which occurred for condominiums in the Orlando area and the impact those general market declines had on the Plaintiffs' claimed damages. Improperly, Mr. O'Rourke assumes that the entirety of the decline in value of the Purchased Condos is attributable to the Defendants' actions despite substantial evidence to the contrary. As a result, Mr. O'Rourke significantly overstates damages.**

    **B.**    **Mr. O'Rourke inappropriately applies the standard of actual damages under his FDUTPA damage theory and overstates damages.**

    **C.**    **Mr. O'Rourke inappropriately applies the standard of actual damages under his fraudulent inducement damage theory and overstates damages.**

    **D.**    **Mr. O'Rourke inappropriately applies the standard of actual damages under his conversion and civil theft damage theory and overstates damages.**

    **E.**    **Mr. O'Rourke improperly calculates Plaintiffs' total expenditures.**

    **F.**    **Mr. O'Rourke assumes that the Trial Plaintiffs will repay all mortgage obligations in full. However, I note that certain information has been produced, which is inconsistent with this assumption.**

### IV.   Summary of Mr. O'Rourke's Damage Analysis

As described in Mr. O'Rourke's report, the Plaintiffs purchased condominiums in the project known as Orlando Cay Clubs Resort and Academy ("Orlando Cay Club"). According to Plaintiffs' allegations, this project was a conversion of an apartment complex (Eaglewood Apartments) into a condominium resort featuring a sports complex. Plaintiffs further purport that between November 2006 and December 2007 (the "Purchase Dates"), the Trial Plaintiffs allegedly entered into purchase agreements with an entity called DC720JV that included a specific condominium located in the Orlando Cay Club complex ("Purchased Condo") and membership into Cay Clubs for a one-time fee of $20,000, which included access to the private club and its associated benefits ("Membership Fee").[3] In addition, many of the Trial Plaintiffs

---

[3] Sales Script for Orlando Cay Club Resort & Academy (Copland 00067).

received lease payments (the "Leaseback Payments") from an entity called CC720JV related to the Purchased Condo to allegedly cover costs such as mortgage payments, real estate taxes, operating costs, association fees, and club fees during the two year renovation and property development period.[4]  Exhibit 2 contains a schedule of the Trial Plaintiffs' leaseback agreements. Plaintiffs assert that the project ended prior to the completed conversion of Orlando Cay Clubs.

In his expert report, Mr. O'Rourke alleges damages suffered by the Plaintiffs under three separate damage theories: (1) Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"); (2) fraudulent inducement; and (3) conversion and civil theft.  For each of these theories, Mr. O'Rourke estimates damages.

For the FDUTPA damage theory, Mr. O'Rourke estimates each Trial Plaintiff's alleged damages as the difference between the market value of the Purchased Condo in the condition in which it was delivered ("Delivered Market Value") and the market value in the condition in which it should have been delivered according to the representations in the marketing and sales materials plus Membership Fees less Leaseback Payments ("Represented Market Value").[5]  Mr. O'Rourke defines the Delivered Market Value as the current market value reported by Greater Orlando Appraisal Association, Inc.[6]  Mr. O'Rourke defines the Represented Market Value as the purchase price paid plus the Membership Fees less Leaseback Payments.

For the fraudulent inducement damage theory, Mr. O'Rourke estimates the alleged damages by adding the total amounts paid by the Trial Plaintiff for the Purchased Condo, subsequent expenses, and payment obligations incurred which the Trial Plaintiff would not have allegedly incurred had the unit not been purchased.[7]  The total expenditures are offset by the Delivered Market Value and Leaseback Payments received.[8]

---

[4] Lease (Nguyen 0028-42).
[5] Expert Report of Michael F. O'Rourke (Revised), pages 2-3.
[6] Expert Report of Michael F. O'Rourke (Revised), page 3.
[7] Expert Report of Michael F. O'Rourke (Revised), page 3.
[8] Expert Report of Michael F. O'Rourke (Revised), page 3.

For the conversion and civil theft damage claim, Mr. O'Rourke estimates alleged damages by adding the following items paid at closing (1) the purchase price, (2) club membership fee paid, and (3) the Sunvest acquisition fee less the Leaseback Payments received.[9]

Table 1 summarizes Mr. O'Rourke's alleged damages estimates.

| Table 1: Summary of Mr. O'Rourke's Alleged Damages Estimates | | |
|---|---|---|
| **No.** | **Damage Assertion** | **Alleged Damages Estimates** |
| 1 | Florida Deceptive and Unfair Trade Practices Act (FDUTPA) | $6,667,907 |
| 2 | Fraudulent Inducement | $8,614,913 |
| 3 | Conversion and Civil Theft | $7,412,721 |

**V.   Mr. O'Rourke failed to properly consider or analyze the general market declines which occurred for condominiums in the Orlando area and the impact those general market declines had on the Plaintiffs' claimed damages. Improperly, Mr. O'Rourke assumes that the entirety of the decline in value of the Purchased Condos is attributable to the Defendants' actions despite substantial evidence to the contrary. As a result, Mr. O'Rourke significantly overstates damages.**

Mr. O'Rourke's primary assumption underlying his damage analysis is that the actions of the Defendants are the *sole cause* of damages under each of his damage theories. However, Mr. O'Rourke fails to consider or address any other factors that could have caused a decline in the value of the Purchased Condos. More specifically, despite the fact that between mid-2006 and 2009 the United States and the Orlando Florida region, in particular, experienced one of the most dramatic declines in residential real estate values in a generation,[10] Mr. O'Rourke fails to evaluate or even consider whether or not the general market conditions for Orlando condominiums contributed to the decline in value of the Purchased Condos included in his alleged damages estimates. By failing to analyze this factor, Mr. O'Rourke's conclusions do not provide a reasonable basis upon which to evaluate damages.

---

[9] Expert Report of Michael F. O'Rourke (Revised), page 3.

[10] Mr. Jack McCabe, Plaintiffs' real estate market expert, agrees that the majority of the United States, including Orlando, experienced a decline in real estate prices between mid-2006 through the present. (Deposition of Jack McCabe, dated October 21, 2009, pages 169-170).

Based on information from the Florida Association of Realtors and the University of Florida Real Estate Research Center,[11] the Orlando condominium market declined between 66% and 71% from the respective months that the Plaintiffs acquired the Purchased Condos to August 2009.

Table 2 and Exhibit 3 summarize the monthly Orlando condominium median prices.



For purposes of my analysis, I calculated the three month weighted average Orlando condominium price as of the respective months that the Plaintiffs acquired the Purchased Condos and compared this result to the calculated three month weighted average condominium price as

---

[11] I note that Mr. Jack McCabe, Plaintiffs' real estate market expert, references this data source, the Florida Association of Realtors, in his expert report when commenting on condominium prices (Report of McCabe Research & Consulting, LLC, page 15, Exhibit 4). Additionally, Mr. McCabe agrees that the Florida Association of Realtors' pricing data provides accurate and reliable data for purposes of forming opinions in this case (Deposition of Jack McCabe dated October 21, 2009, pages 15-17).

of August 2009 to determine the Orlando condominium market decline associated with the respective Purchased Condos ("Market Decline").[12]

Additionally, the Orlando Regional Realtor Association reported in August 2009 that "the median price of a condo unit in the Orlando area has dropped nearly 70 percent in the past two years, from $156,500 in August 2007 to $49,800."[13] Moreover, Kelly Johnson, Trial Plaintiffs' appraiser, states that the "market conditions are declining with the predominance of foreclosures increasing supply."[14] Further, Mr. Johnson indicates that foreclosure sales are a factor in the Orlando market and states that "the subject market has seen an increase in overall supply of available properties in the past 12 months. With the increase of REO [real estate owned] properties available to purchase, values have declined due to over supply [sic]."[15]

For further support regarding the condominium market decline, I analyzed certain real estate transactions involving the IMG Academies Bradenton Florida campus, which I understand certain Trial Plaintiffs allege was relevant to their decision to purchase units in Orlando Cay Clubs. To perform this analysis, I compared transactions involving the nine condominiums at the IMG Academies Bradenton Campus that were purchased in 2006 and subsequently sold in either 2008 or 2009.[16] Based on this analysis, the value of these nine particular condominiums experienced a decline of more than 60% between 2006 and the subsequent date of sale. This decline is consistent with the Market Decline in the Orlando condominium market. Exhibit 4 includes a summary of the IMG Academies Bradenton transactions analysis.

Finally, I reviewed the deposition testimony of Mr. McCabe dated October 21, 2009, Plaintiffs' real estate market expert, who agrees that the Orlando condominium market suffered a

---

[12] Consistent with my analysis, Mr. McCabe prefers to look at three month averages when evaluating pricing data from the Florida Association of Realtors to minimize the month-to-month volatility (Deposition of Jack McCabe dated October 21, 2009, pages 173-176).

[13] Orlando Sentinel article entitled "Condos sic judges on owners for back fees" by Mary Shanklin dated August 28, 2009.

[14] Individual Condominium Unit Appraisal Report – Gonzales, page 1. Based on my review, Mr. Johnson makes the same market observation for each appraisal included in his report.

[15] Individual Condominium Unit Appraisal Report – Gonzales, page 8. Based on my review, Mr. Johnson makes the same market observation for each appraisal included in his report.

[16] For purposes of this analysis, I excluded transactions with sales prices at or below $1,000.

significant decline in value between late 2006 and the present.[17]  Moreover, the decline related to condominium conversions, such the Orlando Cay Club, was likely larger than the one related to new condominiums.[18]  (Both condominium types are included in the general Market Decline calculation.)  In his deposition testimony, Mr. McCabe acknowledges that the market decline stemmed from macroeconomic factors that were not related to the alleged actions or inactions of the Defendants.[19]

These data points demonstrate that the Orlando condominium market suffered a severe downturn in value between the Purchase Dates and August 2009,[20] impacting the current value of the Purchased Condos.  Mr. O'Rourke does not factor this information into his damage analysis in any form whatsoever.

As a result of Mr. O'Rourke's failure to consider the Market Decline, his damage analysis is inappropriate due to its exclusion of a prominent and measurable factor that caused a significant decrease in value of the Purchased Condos, irrespective of any actions or inactions of the Defendants.  Mr. O'Rourke made no attempt to quantify the various factors that led to the decline in value of the Purchased Condos.  As discussed below, Mr. O'Rourke's failure leads to an overestimate of alleged damages for *each* damage theory included in his report.

## VI.  Mr. O'Rourke inappropriately applies the standard of actual damages under his FDUTPA damage theory and overstates damages.

Mr. O'Rourke's first damage theory centers on damages arising from the FDUTPA.  Mr. O'Rourke asserts alleged damages under this theory should be calculated as "the difference in the market value of the unit in the condition in which it was delivered and its market value in the condition in which it should have been delivered according to the representations in the marketing and sales materials."[21]  Based on my review of Mr. O'Rourke's economic application

---

[17] Deposition of Jack McCabe dated October 21, 2009, pages 169-170.
[18] Deposition of Jack McCabe dated October 21, 2009, pages 173-176.
[19] Deposition of Jack McCabe dated October 21, 2009, pages 169-171.
[20] August 2009 is the closest month end to the appraisal date included in Mr. Johnson's appraisals of the Purchased Condos.
[21] Expert Report of Michael F. O'Rourke (Revised), page 2.

of this theory coupled with discussions with counsel and review of related case law, I understand that actual damages under this theory in the circumstances identified by Mr. O'Rourke, if liability is established, equal "the difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered according to the contract of the parties."[22] I note that the purchase agreements for the Purchased Condos state that these condos were sold on an "as is" basis.[23]

Given Mr. O'Rourke's use of the alleged current appraised market value as the value of the Purchased Condos as delivered, he must also consider the portion of value lost as a result of the Market Decline between the Purchase Dates and today, which he failed to do. In his damage estimate, Mr. O'Rourke failed to analyze the Market Decline or any other possible factor that led to the Purchased Condos' decline in value, thereby including the impact of factors which the Trial Plaintiffs would have incurred regardless of the Defendants' alleged actions or inactions.

To correct for Mr. O'Rourke's error, I adjusted his damage analysis to properly reflect the overall market decline. *First*, I calculated the Market Decline from each Trial Plaintiff's Purchase Date to August 2009. *Second*, I excluded the Membership Fees from this calculation based on my understanding that those fees relate exclusively to services provided by Cay Clubs, an unnamed party in this litigation. *Third*, I multiplied the purchase price by the corresponding Market Decline to quantify the general Orlando market decline's impact on the Purchased Condo. *Fourth*, I subtracted the Trial Plaintiffs' current appraised value ("Current Estimated Market Value"), which provides a minimum current value for the property.[24] *Finally*, I subtracted the Leaseback Payments, which Mr. O'Rourke treated as a reduction to the purchase

---

[22] *Stires v. Carnival Corp.*, No. 6:02CV542, 2003 WL 21356781, at *2 (M.D. Fla. 2003). This damages framework is similar to the damages definition included in Mr. O'Rourke's report with one difference. Mr. O'Rourke defines Represented Market Value as "the market value in the condition in which it should have been delivered according to the representations in the marketing and sales materials." He calculates this value as the summation of the contract price plus Membership Fee less Leaseback Payments.

[23] Purchase and Sale Agreement, Section 15.1 (Existing Improvements and Other Matters) "...Buyer agrees to accept the Unit and the Condominium in their 'AS IS – WHERE IS' condition..." (Armstrong 00053). Betty Johnson letter to Kyle C. Kreischer dated July 31, 2008 (DCG 00100).

[24] The Plaintiffs' current estimated market value provided by Mr. Kelly Johnson provides the minimum value of each Purchased Condo as of the date of his report. I have not performed an independent analysis of Mr. Johnson's conclusions and do not have an opinion regarding the validity or accuracy of his analysis other than his results provide a minimum value for each Purchased Condo.

price when determining his Represented Market Value.  This calculation results in the portion of the Purchased Condo's value decline that is *not* directly explained by the overall Orlando Market Decline.

Table 3 and Exhibit 5 summarize the corrected calculation of Mr. O'Rourke's claimed damages after including the Market Decline and exclusion of Membership Fees, which totals $902 thousand.

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
|  | **Table 3:** <br> **O'Rourke Damages Estimates Corrected for Market Decline and Membership Fees** |
| Unit | Plaintiff | Cay Club Purchase Amount | Purchase Month | Current Condo Pricing Month | Orlando Condo Market Decline % [1] | Market Decline | Current Estimated Market Value per Trial Plaintiffs' Appraiser K. Johnson | Leaseback Payments [2] | Corrected O'Rourke Damages Estimate |
| 4115 | Neil | $338,000 | Jun-07 | Aug-09 | -66.9% | ($226,276) | ($32,000) | ($67,600) | $12,124 |
| 4236 | Copland / Hill | $306,976 | May-07 | Aug-09 | -67.5% | ($207,299) | ($24,000) | $0 | $75,677 |
| 4322 | Bakshi | $343,400 | Jul-07 | Aug-09 | -66.5% | ($228,279) | ($32,000) | ($68,680) | $14,441 |
| 4514 | Schroeder | $289,000 | Jul-07 | Aug-09 | -66.5% | ($192,116) | ($24,000) | ($57,800) | $15,084 |
| 4711 | Gonzales | $443,721 | Dec-07 | Aug-09 | -66.0% | ($292,752) | ($50,000) | ($88,744) | $12,225 |
| 4824 | Wooldridge | $412,734 | Jul-07 | Aug-09 | -66.5% | ($274,370) | ($40,000) | ($42,547) | $55,818 |
| 4835 | Chan | $343,546 | Dec-06 | Aug-09 | -69.1% | ($237,275) | ($32,000) | ($12,154) | $62,118 |
| 4913 | French | $432,400 | Jul-07 | Aug-09 | -66.5% | ($287,443) | ($33,000) | ($86,480) | $25,477 |
| 4916 | Galante | $432,316 | Mar-07 | Aug-09 | -69.1% | ($298,940) | ($32,000) | $0 | $101,376 |
| 4923 | Kooyman - Ron & Elaine | $468,308 | Nov-06 | Aug-09 | -69.0% | ($323,253) | ($35,000) | ($66,270) | $43,785 |
| 5036 | Colburn | $311,600 | Sep-07 | Aug-09 | -66.8% | ($208,167) | ($24,000) | ($33,160) | $46,273 |
| 5038 | Mejia | $344,076 | Mar-07 | Aug-09 | -69.1% | ($237,924) | ($27,000) | ($3,000) | $76,152 |
| 5111 | McMahon | $429,904 | Jan-07 | Aug-09 | -69.2% | ($297,677) | ($50,000) | ($15,630) | $66,597 |
| 5125 | Palmer | $354,146 | Jan-07 | Aug-09 | -69.2% | ($245,220) | ($32,000) | ($50,115) | $26,811 |
| 5137 | Konrath | $423,500 | Jun-07 | Aug-09 | -66.9% | ($283,515) | ($40,000) | ($84,700) | $15,285 |
| 5138 | Kooyman - Mark & Emi | $473,608 | Nov-06 | Aug-09 | -69.0% | ($326,911) | ($53,000) | ($67,020) | $26,677 |
| 5222 | Nguyen/ Tran | $343,335 | Feb-07 | Aug-09 | -69.1% | ($237,278) | ($32,000) | ($2,000) | $72,057 |
| 5233 | Semi | $350,000 | Aug-07 | Aug-09 | -66.5% | ($232,839) | ($27,000) | ($70,000) | $20,161 |
| 5327 | Kleiber | $422,516 | Apr-07 | Aug-09 | -68.4% | ($289,186) | ($40,000) | $0 | $93,330 |
| 5411 | Armstrong | $300,900 | Jul-07 | Aug-09 | -66.5% | ($200,027) | ($22,000) | ($60,180) | $18,693 |
| 5433 | Schroeder | $360,000 | Aug-07 | Aug-09 | -66.5% | ($239,491) | ($27,000) | ($72,000) | $21,509 |
| **Total** | | **$7,923,986** | | | | **($5,366,236)** | **($708,000)** | **($948,080)** | **$901,670** |

Notes:
1) Source: The Florida Association of Realtors and the University of Florida Real Estate Research Center.
2) Leaseback Payments are based on the Cay Clubs' Leaseback Information schedule (Celebrity 0233- Celebrity 0238) for all Plaintiffs except Gonzales and McMahon. Gonzales' Leaseback Payment is based on a Leaseback Payment disbursement schedule (Gonzales 00016). McMahon's Leaseback Payment is based on the Deposition of Bryan McMahon dated September 24, 2009, page 182.

## VII.  Mr. O'Rourke inappropriately applies the standard of actual damages under his fraudulent inducement damage theory and overstates damages.

In his second damage theory, fraudulent inducement, Mr. O'Rourke asserts that alleged damages under this theory should be calculated "by adding together the total out amounts paid by the [Trial Plaintiff] for the unit purchase and subsequent expenses and payment obligations incurred

which he or she would not have incurred had the unit not been purchased. The total expenditures have been offset by the appraised value [of] the units."[25]   Based on my review of Mr. O'Rourke's economic application of this theory coupled with discussions with counsel and review of related case law, I understand that there are two applicable standards in the circumstances identified by Mr. O'Rourke when calculating damages related to alleged fraudulent inducement, if liability is proven: (1) out-of-pocket and (2) benefit of the bargain. The "out-of-pocket" standard awards as damages the difference between the purchase price and the real or actual value of the property.[26]   The "benefit of the bargain" standard awards as damages the difference between the actual value of the property and its value had the alleged facts regarding it been true.[27]   Based on the damage standards discussed above, Mr. O'Rourke improperly includes expenditures in his analysis.

In the application of his fraudulent inducement damage theory, Mr. O'Rourke's appears to attempt to apply a "but for" framework whereby the Trial Plaintiffs would recover *all costs* associated with the Purchased Condos. Mr. O'Rourke's damage estimation failed to analyze the Market Decline or any other possible factor that led to the Purchased Condos' decline in value, thereby including the impact of factors which the Trial Plaintiffs would have incurred regardless of the Defendants' alleged actions or inactions. I understand that this approach is not supported by the relevant case law as Mr. O'Rourke's framework would allow the Trial Plaintiffs to recover losses that are not directly attributable to the Defendants alleged actions. In the *Morgan Stanley & Co., Inc. v. Coleman (Parent) Holdings, Inc.*, 955 So. 2d 1124 (Fla. Dist. Ct. App. 2007) case, the court made the following statement regarding this type of damage analysis:

---

[25] Expert Report of Michael F. O'Rourke (Revised), page 3.
[26] *Kind v. Gittman*, 889 So. 2d 87, 90 (Fla. Dist. Ct. App. 2004).
[27] *Kind v. Gittman*, 889 So. 2d 87, 90 (Fla. Dist. Ct. App. 2004).

> *A plaintiff who seeks a benefit-of-the-bargain measure of damages is not entitled to a better bargain than the one it made. ...[A]pplying CPH's [Appellee] "but for" rationale to proving damages would result in recovery of **all non-fraud related losses** in virtually every fraud case, because the defrauded party would need only assert that it would not have agreed to the contract had it known of the fraud.[28]*

This court opinion appears to indicate that the Trial Plaintiffs should only recover losses from the alleged fraud and not from non-fraud related losses, such as the Market Decline. This is consistent with my understanding of the appropriate damages measures from a financial perspective.

Therefore, should the fact finder determine that Mr. O'Rourke's definitions of Represented Market Value and Delivered Market Value are appropriate to calculate alleged damages under his fraudulent inducement theory, it is necessary to correct the Delivered Market Value for the Market Decline. As described above, the Trial Plaintiffs' alleged damages should be limited to losses related to alleged fraud. Mr. O'Rourke's analysis makes no determination between losses associated with the alleged fraud and non-fraud related losses. To correct for Mr. O'Rourke's analysis, I (1) excluded the total expenditures from Exhibit 2 of his report and (2) subtracted the Market Decline from the alleged damage estimate, thereby excluding the impact of a factor that the Trial Plaintiffs would have faced regardless of the alleged actions or inactions of the Defendants. The result of this calculation is the corrected O'Rourke fraudulent inducement damages estimate.

---

[28] *Morgan Stanley & Co., Inc. v. Coleman (Parent) Holdings, Inc.*, 955 So. 2d 1124, 1129 (Fla. Dist. Ct. App. 2007) (emphasis added).

Table 4 and Exhibit 6 summarize the corrected O'Rourke fraudulent inducement alleged damages estimate, which totals $902 thousand.

| | | Table 4: | | | |
| | | O'Rourke's Corrected Fraudulent Inducement Analysis | | | |
| Unit | Plaintiff | Corrected O'Rourke's Represented Market Value | Market Decline [1] | O'Rourke's Delivered Market Value | Corrected O'Rourke Damages Estimate |
|------|-----------|---------|---------|---------|---------|
| 4115 | Neil | $270,400 | ($226,276) | ($32,000) | $12,124 |
| 4236 | Copland / Hill | $306,976 | ($207,299) | ($24,000) | $75,677 |
| 4322 | Bakshi | $274,720 | ($228,279) | ($32,000) | $14,441 |
| 4514 | Schroeder | $231,200 | ($192,116) | ($24,000) | $15,084 |
| 4711 | Gonzales | $354,977 | ($292,752) | ($50,000) | $12,225 |
| 4824 | Wooldridge | $370,187 | ($274,370) | ($40,000) | $55,818 |
| 4835 | Chan | $331,392 | ($237,275) | ($32,000) | $62,118 |
| 4913 | French | $345,920 | ($287,443) | ($33,000) | $25,477 |
| 4916 | Galante | $432,316 | ($298,940) | ($32,000) | $101,376 |
| 4923 | Kooyman - Ron & Elaine | $402,038 | ($323,253) | ($35,000) | - $43,785 |
| 5036 | Colburn | $278,440 | ($208,167) | ($24,000) | $46,273 |
| 5038 | Mejia | $341,076 | ($237,924) | ($27,000) | $76,152 |
| 5111 | McMahon | $414,274 | ($297,677) | ($50,000) | $66,597 |
| 5125 | Palmer | $304,031 | ($245,220) | ($32,000) | $26,811 |
| 5137 | Konrath | $338,800 | ($283,515) | ($40,000) | $15,285 |
| 5138 | Kooyman - Mark & Emi | $406,588 | ($326,911) | ($53,000) | $26,677 |
| 5222 | Nguyen/Tran | $341,335 | ($237,278) | ($32,000) | $72,057 |
| 5233 | Semi | $280,000 | ($232,839) | ($27,000) | $20,161 |
| 5327 | Kleiber | $422,516 | ($289,186) | ($40,000) | $93,330 |
| 5411 | Armstrong | $240,720 | ($200,027) | ($22,000) | $18,693 |
| 5433 | Schroeder | $288,000 | ($239,491) | ($27,000) | $21,509 |
| **Total** | | $6,975,906 | ($5,366,236) | ($708,000) | $901,670 |

Notes:
1) Source: The Florida Association of Realtors and the University of Florida Real Estate Research Center.

## VIII. Mr. O'Rourke inappropriately applies the standard of actual damages under his conversion and civil theft damage theory and overstates damages.

Mr. O'Rourke's final damage theory calculates alleged damages under the conversion and civil theft theory as the sum of "the purchase price, club membership fee paid and the Sunvest Acquisition Fee paid by the Plaintiff at closing, reduced by the leaseback payments received."[29] However, based on my review of Mr. O'Rourke's economic application of this theory coupled with discussions with counsel and review of related case law, I understand that the appropriate measure of damages for this theory in the circumstances identified by Mr. O'Rourke, if liability is established, is the reasonable market value measured as of the time and place of conversion.[30]

---

[29] Expert Report of Michael F. O'Rourke (Revised), page 3.
[30] *Christopher Advertising Group, Inc. v. R & B Holding Co., Inc.*, 883 So. 2d 867, 871 (Fla. Dist. Ct. App. 2004).

Further, I understand that the standard indicates that there should be a deduction for any depreciation of the asset.[31]  Again, Mr. O'Rourke's analysis errs by (1) including the Cay Club membership fee, (2) excluding the impact of the Market Decline which the Purchased Condos are subjected to regardless of the Defendants' alleged actions, and (3) excluding the current market value of the Purchased Condos which represents value attributable to the Trial Plaintiffs.

As a result of these errors, I corrected Mr. O'Rourke's analysis by deducting the following items:

- Leaseback Payments;
- Market Decline; and
- Current Estimated Market Value per Trial Plaintiffs' Appraiser for the Purchased Condos.[32]

Table 5 and Exhibit 7 summarize the corrected O'Rourke conversion and civil theft alleged damages estimate, which totals $902 thousand.

---

[31] *Christopher Advertising Group, Inc. v. R & B Holding Co., Inc.*, 883 So. 2d 867, 872-73 (Fla. Dist. Ct. App. 2004).

[32] I excluded the Sunvest acquisition fee from this calculation since those fees do not relate to IMGA.

Page 14

**Table 5:**
**O'Rourke Conversion and Civil Theft Damages Estimates Corrected for Market Decline and Exclusion of Membership Fee**

| | | | | Deductions | | | |
|---|---|---|---|---|---|---|---|
| Unit | Plaintiff | Cay Club Purchase Amount | Leaseback Payments [1] | Market Decline [2] | Market Value per Trial Plaintiffs' Appraiser K. Johnson | Total Deduction | Corrected O'Rourke Damages Estimate: |
| 4115 | Neil | $338,000 | ($67,600) | ($226,276) | ($32,000) | ($325,876) | $12,124 |
| 4236 | Copland / Hill | $306,976 | $0 | ($207,299) | ($24,000) | ($231,299) | $75,677 |
| 4322 | Bakshi | $343,400 | ($68,680) | ($228,279) | ($32,000) | ($328,959) | $14,441 |
| 4514 | Schroeder | $289,000 | ($57,800) | ($192,116) | ($24,000) | ($273,916) | $15,084 |
| 4711 | Gonzales | $443,721 | ($88,744) | ($292,752) | ($50,000) | ($431,496) | $12,225 |
| 4824 | Wooldridge | $412,734 | ($42,547) | ($274,370) | ($40,000) | ($356,916) | $55,818 |
| 4835 | Chan | $343,546 | ($12,154) | ($237,275) | ($32,000) | ($281,428) | $62,118 |
| 4913 | French | $432,400 | ($86,480) | ($287,443) | ($33,000) | ($406,923) | $25,477 |
| 4916 | Galante | $432,316 | $0 | ($298,940) | ($32,000) | ($330,940) | $101,376 |
| 4923 | Kooyman - Ron & Elaine | $468,308 | ($66,270) | ($323,253) | ($35,000) | ($424,523) | $43,785 |
| 5036 | Colburn | $311,600 | ($33,160) | ($208,167) | ($24,000) | ($265,327) | $46,273 |
| 5038 | Mejin | $344,076 | ($3,000) | ($237,924) | ($27,000) | ($267,924) | $76,152 |
| 5111 | McMahon | $429,904 | ($15,630) | ($297,677) | ($50,000) | ($363,307) | $66,597 |
| 5125 | Palmer | $354,146 | ($50,115) | ($245,220) | ($32,000) | ($327,335) | $26,811 |
| 5137 | Konrath | $423,500 | ($84,700) | ($283,515) | ($40,000) | ($408,215) | $15,285 |
| 5138 | Kooyman - Mark & Emi | $473,608 | ($67,020) | ($326,911) | ($53,000) | ($446,931) | $26,677 |
| 5222 | Nguyen/ Tran | $343,335 | ($2,000) | ($237,278) | ($32,000) | ($271,278) | $72,057 |
| 5233 | Semi | $350,000 | ($70,000) | ($232,839) | ($27,000) | ($329,839) | $20,161 |
| 5327 | Kleiber | $422,516 | $0 | ($289,186) | ($40,000) | ($329,186) | $93,330 |
| 5411 | Armstrong | $300,900 | ($60,180) | ($200,027) | ($22,000) | ($282,207) | $18,693 |
| 5433 | Schroeder | $360,000 | ($72,000) | ($239,491) | ($27,000) | ($338,491) | $21,509 |
| Total | | $7,923,986 | ($948,080) | ($5,366,236) | ($708,000) | ($7,022,316) | $901,670 |

**Notes:**

1) Leaseback Payments are based on the Cay Clubs' Leaseback Information schedule (Celebrity 0233- Celebrity 0238) for all Plaintiffs except Gonzales and McMahon. Gonzales' Leaseback Payment is based on a Leaseback Payment disbursement schedule (Gonzales 00016). McMahon's Leaseback Payment is based on the Deposition of Bryan McMahon dated September 24, 2009, page 182.

2) Source: The Florida Association of Realtors and the University of Florida Real Estate Research Center.

## IX.  Mr. O'Rourke improperly calculates Plaintiffs' total expenditures.

Mr. O'Rourke purports to calculate the total expenditures that the Trial Plaintiffs incurred or will incur as a result of the Purchased Condos in Exhibit 2 of his report. However, he errs by excluding rental income generated from the Purchased Condos for several Trial Plaintiffs and including unpaid obligations and the portion of cash paid at closing related to the Membership Fees.

I corrected Mr. O'Rourke's calculation by including only the actual cash payments/receipts for each of the Trial Plaintiffs:

- Actual Leaseback Payments received by the Trial Plaintiffs;[33] and
- Rental income generated from the Purchased Condos.[34]

Further, I corrected Mr. O'Rourke's calculation by including only the actual cash payments for the Trial Plaintiffs:

- Cash paid at closing;[35]
- Cash mortgage interest;
- Property taxes paid;
- Insurance paid;
- Condo association fees paid;
- Repairs related to the Purchased Condos; and
- Other escrow payments.[36]

Based on this corrected analysis of actual cash receipts and expenditures, certain Trial Plaintiffs have, to date, experienced positive net cash flow.

---

[33] Based on my review of his analysis, Mr. O'Rourke appears to rely on a summary of Leaseback Payments (Celebrity 0233- Celebrity 0238) for all units except for Mr. Gonzalez (Unit 4711) and Mr. McMahon (Unit 5111). Mr. McMahon's deposition testimony appears to indicate that he received $45 thousand in Leaseback Payments less than the source document used for the other units (Deposition of Bryan McMahon dated September 24, 2009, page 182). Mr. Gonzalez is not listed on the summary of Leaseback Payments and his Leaseback Payment is based on a Leaseback Payment disbursement schedule (Gonzales 00016).

[34] I calculated rental income using information provided by the Trial Plaintiffs' deposition testimony. Should there be additional discovery regarding this cash receipt, I will update my analysis, as appropriate.

[35] I excluded the portion of cash paid at closing related to the Membership Fees.

[36] Based on the discovery, it is unclear what these payments specifically relate to.

Table 6 and Exhibit 8 summarize the corrected version of Mr. O'Rourke's Net Cash Expenditures for each of the Trial Plaintiffs.

**Table 6**
**O'Rourke's Corrected Net Cash Expenditures Analysis**

| | | Investor Cash Inflow | | | Investor Cash Outflow | | | | | | Corrected O'Rourke Net Cash Expenditures |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Unit | Plaintiff | Leaseback Payments [1] | Rent Recv'd [2] | Total Cash Receipts | Cash Paid per HUD Statement [3] | Cash Mortgage Interest [4] | Property Taxes Paid [5] | Cash Condo Association Fees Paid [6] | Insurance, Repairs, and Other Escrow Payments [7] | Total Cash Expenditures | |
| 4115 | Neil | $67,600 | $0 | $67,600 | $19,949 | $12,940 | $2,218 | $1,509 | $0 | $36,615 | $30,985 |
| 4236 | Copland / Hill | $0 | $7,689 | $7,689 | $15,671 | $12,847 | $4,375 | $2,021 | $3,373 | $38,288 | ($30,599) |
| 4322 | Bakshi | $68,680 | $1,430 | $70,110 | $77,517 | $38,641 | $6,562 | $1,509 | $593 | $124,821 | ($54,711) |
| 4514 | Schroeder | $57,800 | $0 | $57,800 | $20,329 | $10,396 | $1,638 | $1,962 | $0 | $34,325 | $23,475 |
| 4711 | Gonzales | $88,744 | $0 | $88,744 | $60,781 | $7,476 | $6,353 | $0 | $322 | $74,932 | $13,812 |
| 4824 | Wooldridge | $42,547 | $0 | $42,547 | $94,265 | $21,745 | $5,298 | $1,692 | $1,201 | $124,200 | ($81,654) |
| 4835 | Chan | $12,154 | $0 | $12,154 | $13,641 | $43,616 | $5,729 | $5,211 | $0 | $68,197 | ($56,043) |
| 4913 | French | $86,480 | $0 | $86,480 | ($8,767) | $26,494 | $3,786 | $3,212 | $0 | $24,725 | $61,755 |
| 4916 | Galante | $0 | $0 | $0 | $43,239 | $25,986 | $6,697 | $0 | $1,562 | $77,485 | ($77,485) |
| 4923 | Kooyman - Ron & Elaine | $66,270 | $0 | $66,270 | $49,855 | $40,068 | $7,650 | $5,963 | $1,539 | $105,075 | ($38,805) |
| 5036 | Colburn | $33,160 | $0 | $33,160 | $28,091 | $1,710 | $1,123 | $489 | $6,457 | $37,870 | ($4,710) |
| 5038 | Mejia | $3,000 | $3,250 | $6,250 | $34,884 | $11,578 | $4,715 | $1,713 | $1,785 | $54,674 | ($48,424) |
| 5111 | McMahon | $15,630 | $22,380 | $38,010 | $32,909 | $20,841 | $6,103 | $1,200 | $0 | $61,052 | ($23,042) |
| 5125 | Palmer | $50,115 | $0 | $50,115 | $16,530 | $22,752 | $5,260 | $3,367 | $0 | $47,910 | $2,205 |
| 5137 | Konrath | $84,700 | $0 | $84,700 | $18,412 | $17,043 | $5,280 | $2,599 | $0 | $43,334 | $41,366 |
| 5138 | Kooyman - Mark & Emi | $67,020 | $0 | $67,020 | $50,514 | $35,321 | $7,399 | $4,933 | $742 | $98,909 | ($31,889) |
| 5222 | Nguyen/Tran | $2,000 | $0 | $2,000 | $33,025 | $41,407 | $5,355 | $6,054 | $0 | $85,842 | ($83,842) |
| 5233 | Semi | $70,000 | $0 | $70,000 | $27,104 | $11,845 | $5,740 | $1,390 | $0 | $46,080 | $23,920 |
| 5327 | Kleiber | $0 | $13,770 | $13,770 | $25,362 | $40,535 | $5,616 | $4,980 | $0 | $76,494 | ($62,724) |
| 5411 | Armstrong | $60,180 | $0 | $60,180 | $11,712 | $14,340 | $1,423 | $1,879 | $0 | $29,353 | $30,827 |
| 5433 | Schroeder | $72,000 | $0 | $72,000 | $42,033 | $12,145 | $1,217 | $4,326 | $0 | $59,821 | $12,179 |
| Total | | $948,080 | $48,519 | $996,599 | $707,058 | $469,725 | $99,633 | $56,009 | $17,573 | $1,350,004 | ($353,405) |

Notes:
1) Leaseback Payments are based on the Cay Clubs' Leaseback Information schedule (Celebrity 0233- Celebrity 0238) for all Plaintiffs except Gonzales and McMahon. Gonzales' Leaseback Payment is based on a Leaseback Payment disbursement schedule (Gonzales 00016). McMahon's Leaseback Payment is based on the Deposition of Bryan McMahon dated September 24, 2009, page 182.

2) Based on deposition testimony and lease agreements where available.

3) Based on U.S. Department of Housing and Urban Development HUD-1 statements.

4) Mortgage Interest Paid is based on mortgage statements provided. In the absence of mortgage statements, mortgage interest paid is calculated based on discovery and deposition testimony.

5) Property Taxes Paid is based on mortgage and tax statements provided. I excluded property taxes paid that were included in the Cash Paid per HUD Statements.

6) Condo Association Fees Paid is based on condo association statements and payment support provided. In the absence of payment support, Condo Association Fees Paid is calculated based on discovery and deposition testimony.

7) Based on invoice and payment support provided.

**X.     Mr. O'Rourke assumes that the Trial Plaintiffs will repay all mortgage obligations in full.  However, I note that certain information has been produced, which is inconsistent with this assumption.**

A significant portion of Mr. O'Rourke's damages estimate under each of the three theories is related to outstanding mortgages on the properties.[37]

Table 7 and Exhibit 9 summarize the comparison between the Trial Plaintiffs' total mortgage principal outstanding and each of Mr. O'Rourke's damage estimates.

**Table 7:**
**Mortgage Principal Outstanding as a % of O'Rourke's Damages Estimates**

| Unit | Plaintiff | Total Mortgage Principal Outstanding [1] | O'Rourke FDUTPA Damages (Exhibit 1) | O'Rourke Fraudulent Inducement (Exhibit 2) | O'Rourke Conversion and Civil Theft (Exhibit 3) | O'Rourke FDUTPA Damages (Exhibit 1) | O'Rourke Fraudulent Inducement (Exhibit 2) | O'Rourke Conversion and Civil Theft (Exhibit 3) |
|---|---|---|---|---|---|---|---|---|
| 4115 | Neil | $338,562 | $258,400 | $347,167 | $291,963 | 131% | 98% | 116% |
| 4236 | Copland / Hill | $311,549 | $302,976 | $385,447 | $328,712 | 103% | 81% | 95% |
| 4322 | Bakshi | $290,720 | $262,720 | $346,450 | $296,323 | 111% | 84% | 98% |
| 4514 | Schroeder | $293,550 | $227,200 | $287,996 | $252,532 | 129% | 102% | 116% |
| 4711 | Gonzales | $398,106 | $304,977 | $384,071 | $354,977 | 131% | 104% | 112% |
| 4824 | Wooldridge | $346,187 | $350,187 | $451,308 | $392,015 | 99% | 77% | 88% |
| 4835 | Chan | $344,349 | $319,392 | $413,949 | $353,319 | 108% | 83% | 97% |
| 4913 | French | $472,305 | $332,920 | $456,825 | $366,589 | 142% | 103% | 129% |
| 4916 | Galante | $402,800 | $420,316 | $518,982 | $454,691 | 96% | 78% | 89% |
| 4923 | Kooyman - Ron | $439,477 | $387,038 | $509,744 | $424,621 | 114% | 86% | 103% |
| 5036 | Colburn | $298,142 | $274,440 | $335,357 | $299,863 | 109% | 89% | 99% |
| 5038 | Mejia | $331,730 | $334,076 | $436,084 | $363,006 | 99% | 76% | 91% |
| 5111 | McMahon | $404,913 | $384,274 | $481,510 | $436,655 | 105% | 84% | 93% |
| 5125 | Palmer | $373,970 | $292,031 | $425,635 | $326,014 | 128% | 88% | 115% |
| 5137 | Konrath | $420,900 | $318,800 | $411,026 | $360,743 | 132% | 102% | 117% |
| 5138 | Kooyman - | $444,197 | $373,588 | $495,310 | $429,199 | 119% | 90% | 103% |
| 5222 | Nguyen/Tran | $325,708 | $329,335 | $414,471 | $363,241 | 99% | 79% | 90% |
| 5233 | Semi | $332,745 | $273,000 | $344,346 | $301,603 | 122% | 97% | 110% |
| 5327 | Kleiber | $420,375 | $402,516 | $507,629 | $444,858 | 104% | 83% | 94% |
| 5411 | Armstrong | $304,855 | $238,720 | $305,720 | $262,106 | 128% | 100% | 116% |
| 5433 | Schroeder | $340,341 | $281,000 | $355,886 | $309,691 | 121% | 96% | 110% |
| Total | | $7,635,481 | $6,667,907 | $8,614,913 | $7,412,721 | 115% | 89% | 103% |

Notes:
1) Based on most current mortgage statement and/or loan payoff quote included in discovery.

Based on limited discovery, the Trial Plaintiffs and certain of the mortgage lenders appear to have entered into an agreement whereby the two parties will not pursue any action against the other, at least until the completion of this litigation, including the delay of any foreclosure

---

[37] I note in the Plaintiffs' Motion for Protective Order dated October 14, 2009 that the attorneys for the Plaintiffs stated "a large portion of each Plaintiff's damages consists of the outstanding loan obtained to finance the purchase price …." Plaintiffs' Motion for Protective Order dated October 14, 2009 (D.E. 134 at 2).

Page 18

proceedings.[38]  For example, one lender (TMST Home Loans, Inc.) provided Amir Bakshi and Yael Kovo ("Bakshi / Kovo") with the following five relief options to assist these plaintiffs in saving their investment:

1. **Forbearance Relief**:  TMST Home Loans, Inc. may be able to arrange a payment plan which will bring Bakshi / Kovo's account current over a period of time.

2. **Pre-foreclosure Sale**: Bakshi / Kovo may opt to try and sell their home before foreclosure can occur and eliminate their loan debt even if the value of their property is less than the amount they owe.  This will protect their credit history; however, their loan will be marked "settled for less than balance due."

3. **Loan Modification**: TMST Home Loans, Inc. may be able to modify Bakshi / Kovo's loan to a lower monthly payment or extend the term.

4. **Hardship Assumption**: This permits a qualified buyer / applicant to assume title to Bakshi / Kovo's property and the loan obligation as well.

5. **Deed-In-Lieu**: As a last resort and with prior approval from TMST Home Loans, Inc., Bakshi / Kovo may be able to "give back" their property.  TMST Home Loans, Inc. notes that there cannot be any second mortgages or liens on the property and the property must be vacant.[39]

Other lenders, such as CitiMortgage, provided certain Trial Plaintiffs similar offers regarding available options with respect to their outstanding mortgage obligations.[40]  Further, counsel for Patricia French (Trial Plaintiff) in a letter to Ms. French's lender offered to renegotiate her outstanding loan based on "the fair market value of the Property at the time of the sale or even turn the Property over to GPM [Lender] as part of a deed in lieu of foreclosure, as long as GPM would agree not to seek a deficiency judgment and not to negatively affect her credit."[41]

---

[38] Kyle C. Kreischer's letter to GreenPoint Mortgage Funding dated July 8, 2008 (DCG 0116-0118).  Discovery related to these potential agreements is ongoing. I will update this analysis, as appropriate, based on additional information.
[39] TMST Home Loans, Inc. letter to Amit M. Bakshi dated August 17, 2009 (DCG 00017).
[40] Citi Mortgage Letter to Mary J. Schroeder dated July 3, 2008 (DCG 00093).
[41] Kyle C. Kreischer's letter to GreenPoint Mortgage Funding dated July 8, 2008 (DCG 00116-00118).

Table 8 summarizes the current payment and collection status of the Trial Plaintiffs' mortgages based on the discovery to date.

| Unit | Plaintiff | Current Mortgage Status | Source |
|---|---|---|---|
| | | **Table 8:** | |
| | | **Trial Plaintiffs' Current Mortgage Status** | |
| 4115 | Neil | • Plaintiff not making mortgage payments<br>• No current collection action by bank | Jan. 2008 Email exchange between Cantrell and Cho (JPM/GASTALDI 00033-35); 12/18/07 Fax from Cantrell to Cho (JPM/GASTALDI 00050-56); 07/22/09 L. Neil Dep. 33; 07/22/09 D. Neil Dep. 139. |
| 4236 | Copland/ Hill | • Plaintiff not making mortgage payments<br>• No collection action by bank | 07/9/09 Hill Dep. 114; 07/09/09 Copland Dep. 162-163  (foreclosure proceedings were stayed; last docket entry was 09/29/08). |
| 4322 | Bakshi/ Kovo | • Plaintiff not making mortgage payments<br>• No known collection action by bank | 07/20/09 Bakshi Dep. 107; 133 -134; THNBRG000560-564. |
| 4514 | Schroeder | • Plaintiff not making mortgage payments<br>• No collection action by bank | 06/18/09 B. Schroeder Dep. 149. |
| 4711 | Gonzales | • In Foreclosure<br>• No activity in proceeding since July 2009 as of the date of this report | 07/24/09 C. Gonzales Dep. 151-152; Foreclosure Docket Sheet (publicly available) (no activity since 07/28/09). |
| 4824 | Wooldridge | • In Foreclosure<br>• No known deficiency judgment or proceeding | 07/29/09 W. Wooldridge Dep. 50 -51; Foreclosure Docket Sheet (publicly available) (default judgments entered 8/31/09; motion for final judgment filed on 10/06/09). |
| 4835 | Chan | • Plaintiff not making mortgage payments<br>• No collection action by bank | Jan. 2008 Email exchange between Cantrell and Cho (JPM/GASTALDI 00033-35); 12/18/07 Fax from Cantrell to Cho (JPM/GASTALDI 00050-56); 06/15/09 Chan Dep. 205-212. |
| 4913 | French | • In Foreclosure<br>• No activity in proceeding since July 2009 as of the date of this report | 05/26/09 P. French Dep. 186; Foreclosure Docket Sheet (publicly available) (no activity since 07/9/09). |
| 4916 | Galante | • Plaintiff not making mortgage payments<br>• No collection action by bank | Jan. 2008 Email exchange between Cantrell and Cho (JPM/GASTALDI 00033-35); July 2008 Email exchange between Cantrell and Cho (JPM/GASTALDI 00016-19); 05/28/09 Galante Dep. 227-228. |
| 4923 | Kooyman | • Plaintiff not making mortgage payments<br>• No collection action by bank | Jan. 2008 Email exchange between Cantrell and Cho (JPM/GASTALDI 00033-35); 12/18/07 Fax from Cantrell to Cho (JPM/GASTALDI 00050-56); 07/6/09 Emi Kooyman Dep. 94 -96. |
| 5036 | Colburn | • In Foreclosure<br>• No known deficiency judgment or proceeding | 07/21/09 B. Colburn Dep. 126 -128; Foreclosure Docket Sheet (publicly available) (disposition sheet entered on 05/05/09,  notice of sale filed 09/14/09 and notice to cancel sale filed on 10/16/09). |
| 5038 | Mejia | • Plaintiff not making mortgage payments<br>• No collection action by bank | 01/02/07 Letter from Cantrell to Cho (Plaintiffs 00814); 06/16/09 Mejia Dep. 92. |
| 5111 | McMahon | • Plaintiff not making mortgage payments<br>• No collection action by bank | Jan. 2008 Email exchange between Cantrell and Cho (JPM/GASTALDI 00033-35); 12/18/07 Fax from Cantrell to Cho (JPM/GASTALDI 00050-56); 09/24/09 R. McMahon Dep. 48-49; 09/24/09 B. McMahon Dep. 213-214. |

| | | Table 8: | |
| | | Trial Plaintiffs' Current Mortgage Status | |
| Unit | Plaintiff | Current Mortgage Status | Source |
|------|-----------|---------------------------|--------|
| 5125 | Palmer | • Plaintiff not making mortgage payments<br>• No collection action by bank | 08/27/09 Palmer Dep. 15-17. |
| 5137 | Konrath | • Plaintiff not making mortgage payments<br>• No collection action by bank | Jan. 2008 Email exchange between Cantrell and Cho (JPM/GASTALDI 00033-35); 06/06/08 Email from Cantrell to Meinertzhagen (JPM/GASTALDI 00037); 05/29/09 Konrath Dep. 194-195. |
| 5138 | Kooyman | • Plaintiff not making mortgage payments<br>• No collection action by bank | Jan. 2008 Email exchange between Cantrell and Cho (JPM/GASTALDI 00033-35); 12/18/07 Fax from Cantrell to Cho (JPM/GASTALDI 00050-56); 07/06/09 Emi Kooyman Dep. 94 -96. |
| 5222 | Nguyen/ Tran | • Plaintiff not making mortgage payments<br>• No collection action by bank | Jan. 2008 Email exchange between Cantrell and Cho (JPM/GASTALDI 00033-35); 07/28/09 Email from Cantrell to Meinertzhagen (JPM/GASTALDI 00003); 09/01/09 Email from Cantrell to Meinertzhagen (JPM/GASTALDI 00001). |
| 5233 | Semi | • Plaintiff not making mortgage payments<br>• No collection action by bank | 07/01/08 Letter from JPMorgan Chase to Semi (DCG 00030); 07/28/09 Semi Dep. 11- 14. |
| 5327 | Kleiber | • Plaintiff not making mortgage payments<br>• No collection action by bank | 05/27/09 Kleiber Dep. 176. |
| 5411 | Armstrong | • Plaintiff not making mortgage payments<br>• No collection action by bank | 07/27/09 R. Armstrong Dep. 154-155. |
| 5433 | Schroeder | • Plaintiff not making mortgage payments<br>• No current collection action by bank | 04/02/09 Email from Kreischer to Tobin (Plaintiffs 01027); 06/18/09 B. Schroeder Dep. 149 (foreclosure proceedings were stayed; last docket entry was 10/16/08). |

Furthermore, there are examples whereby Plaintiffs had their loans forgiven without repaying them. For example, Jacintha Peris, a member of the Plaintiff group, appears to have had her loan forgiven in late 2008, without going through foreclosure proceedings. According to her deposition testimony, Ms. Peris stopped making mortgage payments in April 2008, which led M&T Bank [Mortgage Lender] to threaten to begin foreclosure proceedings.[42] On November 28, 2008, a warranty deed in lieu of foreclosure was issued which transferred Ms. Peris's Purchased Condo to M&T Bank.[43] In exchange for Ms. Peris transferring the Purchased Condo to M&T Bank, the bank agreed to forgive the full outstanding amount of her mortgage.[44]

---

[42] Deposition of Jacintha Peris dated October 5, 2009, pages 73-76.
[43] Peris Deposition Exhibit 2; Deposition of Jacintha Peris dated October 5, 2009, page 74.
[44] Peris Deposition Exhibit 2; Deposition of Jacintha Peris dated October 5, 2009, page 73.

Separately, in a July 31, 2008 letter to HSBC Mortgage Services, the Donelson law firm wrote the following regarding a Plaintiff's interaction with a lender:

> *Yet another national lender has offered our Orlando Cay Club client a deed in lieu of foreclosure deal in which our client has agreed to waive all future claims against the lender and deliver the deed to the property to the lender in exchange for the lender's agreement to waive the deficiency on the loan, as well agreements from the lender regarding the tax implications and credit issues set forth below in bullet points.[45]*

Table 9 contains a summary of select correspondence between Trial Plaintiff representatives and various lenders regarding the Trial Plaintiffs' attempts to possibly renegotiate their outstanding mortgages.

| | | Table 9: | |
|---|---|---|---|
| Lender | Trial Plaintiff | Summary of Select Correspondence Regarding Requests for Mortgage Renegotiation | |
| Lender | Trial Plaintiff | Request for Renegotiation by Trial Plaintiffs' Attorneys | Source |
| Chase | Ron and Trina Konrath (Unit # 5137), Donald J. Semi (Unit # 5233) and Mary J. Schroeder (Unit # 4514) | "Our clients are most interested in negotiating a long term deal which will rid them of these sham investments and the mortgages associated therewith. Our clients are aware of Chase's involvement as Cay Club's preferred lender in the Orlando Cay Club matter (including the significant involvement of one particular Chase representative) along with the potential lender liability claims associated therewith. However, at this time, our clients are more interested in working with Chase to avoid the necessity of any such claims. We have at least three (3) additional Orlando Cay Club clients with Chase mortgages who would be interested in these negotiations." | DCG 00065 - DCG 00066 |
| National City Mortgage | Mary J. Schroeder (Unit # 5433) | "A short term method of resolving the problem created by this transaction would be a complete forbearance on the payments and the interest accruing on the Account pending resolution of the Belt Law Firm's Lawsuit..."..."Thus, our client is most interested in negotiating a long term deal with NCM which will rid her of this sham real estate purchase and the Account associated therewith." | DCG 00208 - DCG 00211 |
| CitiMortgage | Mary J. Schroeder (Unit # 5433) | "A short term method of resolving the problem created by this transaction would be a complete forbearance on the payments and the interest accruing on the Account pending resolution of the Belt Law Firm's Arbitration..."..."We are hopeful that CitiMortgage will work with our client in coming to a mutually beneficial solution." | DCG 00070 - DCG 00074 |
| HSBC | Carlos and Martha Gonzales (Unit #4711) | "...our clients are most interested in negotiating a long term deal with HSBC which will rid them of this sham real estate purchase and the Account associated therewith. Our clients are willing to turn over the Property as part of a deed in lieu of foreclosure transaction, as long as HSBC would agree not to seek a deficiency judgment against our clients and not to negatively affect their credit." | DCG 00204- DCG 00207 |

---

[45] Donelson letter to HSBC Mortgage Services Litigation Department dated July 31, 2008 (DCG 00046-00047). I note that the produced document does not include the referenced bullet points.

| Table 9: Summary of Select Correspondence Regarding Requests for Mortgage Renegotiation | | | |
|---|---|---|---|
| Lender | Trial Plaintiff | Request for Renegotiation by Trial Plaintiffs' Attorneys | Source |
| GreenPoint Mortgage | Patricia French (Unit #4913) | "Our client remains willing to re-negotiate the [mortgage] Account based upon the fair market value of the Property at the time of the sale or even turn the Property over to GPM as part of a deed in lieu of foreclosure, as long as GPM would agree not to seek a deficiency judgment and not negatively affect her credit." | DCG 00116 - DCG 00118 |

In his analysis, Mr. O'Rourke does not appear to consider these data points, which appears to be inconsistent with his assumption that the Trial Plaintiffs will repay all mortgage obligations in full.

## XI.    Documents and Information Considered

A list of documents that I considered in conducting my analysis is attached as Exhibit 10.

## XII.    AlixPartners Compensation

AlixPartners is being compensated at my normal and customary rate of $650 per hour for my time and between $200 and $475 per hour for staff working at my direction.

## XIII.   Additional Analysis and Demonstrative Aids

I reserve the right to amend and/or supplement this report based upon any new and/or additional facts or other documents which may come to my attention, or information, including expert reports, deposition testimony and related document exhibits thereto, which may be produced.

If I am called upon to testify, I may prepare demonstrative aids, such as graphs, charts or tables.


Louis G. Dudney, CPA

October 30, 2009

Page 23

Exhibit 1

## Louis G. Dudney, CPA
**Managing Director**
**Chicago Office**
**+1 (312) 551-3269**
ldudney@alixpartners.com

**Professional Highlights**

Louis Dudney's experience covers broad types of operational, financial, valuation, litigation, bankruptcy and management consulting engagements, including financing, mergers and acquisitions, damages analysis, lost profit determinations, valuations, solvency determinations, debtor advisory assistance, credit advisory assistance, and corporate investigations.

Louis Co-Leads AlixPartners Middle Market Restructuring practice and also Co-Leads AlixPartners Corporate Investigations practice. Prior to joining AlixPartners, Mr. Dudney was a partner with PricewaterhouseCoopers in its Financial Advisory Services Group.

**Client Experience**

Louis has consulted with companies in a number of industries including retail, professional services, specialty chemicals, real estate, financial services, hospitality, healthcare, entertainment, telecommunications, security services, manufacturing, construction, energy, and consumer products. In performing engagements in these industries, he has analyzed economic, accounting and financial issues and testified in federal civil, criminal and bankruptcy courts, state courts, American Arbitration Association hearings and state regulatory proceedings as an expert witness.

**Affiliations**

Louis holds a Bachelor of Business Administration with a major in accounting from The College of William & Mary and is a Certified Public Accountant. Louis is a member of the Illinois Society of Certified Public Accountants, the American Institute of Certified Public Accountants, the Licensing Executives Society, the American Bankruptcy Institute and the Turnaround Management Association.

**AlixPartners**

Exhibit

# Louis G. Dudney - Representative Assignments

- In an ownership and management contract dispute involving the GM Building in New York, retained to analyze certain aspects of the management company's contract and disputes related to the accounting for certain items. Additionally, analyzed the sales value allocable to various owners as a result of a contractual waterfall provision.

- In a construction and business failure dispute, retained to analyze damages related to the collapse of a large construction contractor. As part of this engagement, analyses of new building activity, home sales and pricing and construction costs were performed.

- In an ultra-luxury condominium construction dispute, retained to analyze damages related to the design, construction, and expected returns to the developer from the completion of this project. As part of this analysis, design costs, financing, condominium sales histories and expected developer returns were analyzed.

- For a real estate limited partnership, retained to opine on a HUD audit of operations, cash flows and transactions related to inappropriate payments between identity-of-interest companies and the Management Agent. This analysis included reviews of compliance audits and analyses of transactions between several layers of limited partnerships.

- Retained by a large construction contractor to analyze a $4 billion construction damages claim alleged by the owners of 6 large nuclear power plants. As part of this assignment, reviewed project financing and cost documents, project operational data and consumer pricing to determine the value of the alleged claims.

- In a real estate development dispute, retained to analyze the damages related to the development of multiple commercial manufacturing and transportation logistics sites. As part of this engagement, analyzed the profitability of historical projects, performed related cost allocations, and analyzed future potential building activity.

- Retained by a large electrical contractor to analyze its operations, review the status of its projects, cost overruns and claims. As part of this assignment, analyses of individual construction contracts were conducted to determine the financial status of claims, project profitability and future expected cash outflows.

- For a caisson and foundation building company, retained by the bank group in a workout to analyze the status of various ongoing construction projects and document and trace the flow of funds for selected transactions between numerous operating entities. This assignment included analyses of financial reporting, intercompany transactions, bank account activity, investment transactions and payments to third parties.

2

AlixPartners

Exhibit 1

# Louis G. Dudney - Representative Assignments

▲ Retained by a bond insurer to value a major telecommunications services provider in relation to a refinancing plan contemplated by the company.

▲ Retained by a major big box consumer goods retailer to analyze its accounting for individual store profitability and selected hour and wage costs as part of an employee class action suit.

▲ In a breach of contract matter, retained by a medical products distributor to analyze the damage claims made by a new business venture partner. As part of this engagement, analyses of budgets, projections and forecasts were conducted. In addition, incremental lost revenues and avoided costs were investigated.

▲ Retained by a state insurance regulatory entity to assist in the processing and payment of thousands of claims associated with the liquidation, receivership and/or rehabilitation of various insurance companies. Additionally retained to analyze reinsurance payments, claims, bordereaux, and related information as part of an effort to settle thousands of outstanding claims.

▲ In a venture capital transaction, determined the damages associated with fraudulent financial information provided prior to the sale of a software company. This required analysis of corporate financial statements, independent accountants' workpapers and other financial disclosures.

▲ Retained by an international insurance and financial services firm to coordinate the financial investigation of the former CEO and CFO related to over $100 million in loans taken from the company. This assignment included the analysis of personal financial information, bank statements, brokerage statements, investments and other transactional documentation. Additionally, assisted in the negotiation and execution of out-of-court settlement agreements to repay certain funds due.

▲ Retained by a major commodities broker/dealer to investigate the alleged theft of corporate assets and fraudulent accounting associated with transactions totaling several billion dollars. As part of this investigation, analyses of intercompany transactions, debt financings, a leveraged buyout, and an initial public offering were conducted.

▲ In a business interruption matter, retained by an international equipment manufacturer to determine the damages associated with a pharmaceutical manufacturing plant explosion. As part of this engagement, analyses of the business interruption loss as well as the extra expense and property damage claims were performed.

AlixPartners

3

Exhibit

# Louis G. Dudney - Representative Assignments

▸ In a bankruptcy litigation matter, retained by a large telecommunications equipment manufacturer to analyze over $100 million in potential preferences, evaluate the solvency of the debtor at various dates historically, and perform tests regarding capital structures and reasonably equivalent value related to claimed fraudulent conveyances in excess of $3 billion.

▸ In a bankruptcy litigation matter, retained by a food distribution company to analyze potential fraudulent conveyances related to several acquisitions that occurred prior to its Chapter 11 filing. As part of this assignment, multiple valuations of the debtor were performed. In addition, analyses of capital adequacy and reasonably equivalent value were also performed.

▸ Retained by a major ERP software manufacturer to analyze costs and damages claimed by a customer regarding a failed implementation claim. As part of this assignment, incremental costs, value offsets and damages were analyzed.

▸ In a copyright and trademark dispute, retained to evaluate the damages incurred, including dilution and diminution of value to the subject marks and names, related to a leading brand of sales training courses. As part of this assignment consumer confusion and pricing issues were analyzed.

▸ In an employee termination dispute, analyzed the profitability of a high tech maker of application specific integrated circuits to determine the appropriate payout to a former employee. As part of this analysis, the books and records of the company were analyzed to determine the profitability associated with selected products. Moreover, product line financial statements were constructed, cash flows were traced and historical payment activity was analyzed.

▸ Retained by a major consumer products manufacturer to investigate an employee kickback scheme and determine damages associated with alleged under-market contracts being provided to transportation carriers (full truck load and intermodal) in exchange for cash and other asset payments.

▸ For a specialty steel manufacturer, retained to calculate the economic loss from an interruption in business caused by an equipment failure. As part of this engagement, lost revenues were calculated as well as costs incurred or saved as a result of the equipment failure. The analysis performed resulted in a calculation of the profits lost due to the business interruption.

AlixPartners

4

Exhibit 1

# Louis G. Dudney - Representative Assignments

- Retained by a professional services company to evaluate various restructuring alternatives related to a redemption demand made by the Company's preferred stockholders.

- Retained by a nationally recognized opinion polling and market research organization to help it renegotiate its credit agreement and reset its covenants as a result of a broader restructuring of the business.

- Retained in a large Chapter 11 filing to evaluate financing options and restructure over $50 million in lease financed assets. As part of this work, assisted the debtor source new financing options, negotiate restructured lease agreements and evaluate historical and future operating costs.

- For an integrated steel producer, retained to analyze the operations of a division that was experiencing financial distress. As part of this assignment, facility utilization, product pricing, distribution and sales channels were analyzed to identify opportunities for cost savings and EBITDA improvement.

- Retained by a bank group to analyze the operating and financial performance of a troubled steel company. As part of this engagement, assisted the bank group in evaluating and developing alternative restructuring plans including out-of-court v. Chapter 11 options, valuing the subject company, analyzing operating performance, monitoring liquidity and forecasting the company's ability to continue operations. Additionally, participated in negotiations regarding the future options for the business with various stakeholders including equity, employee unions, government oversight and various lender groups.

- Retained to evaluate and investigate the financial condition, intercompany accounting, and fuel purchase activity of a major trucking and logistics company. As part of this assignment, analyses of fuel surcharges, corporate fuel cards and intercompany cash transfers were conducted.

- For a national trucking and logistics firm, retained to provide a valuation as part of a series of disputed transactions. As part of this engagement, a comprehensive comparable company analysis was performed in addition to a discounted cash flow analysis.

- Retained by the board of directors of a major ERP software provider to perform an investigation regarding alleged earning management by the CEO and CFO. As part of this investigation, interviews of key financial / accounting personnel were performed. Additionally, the detailed books and records of the company were analyzed to determine the veracity of the allegations.

5

AlixPartners

Exhibit

# Louis G. Dudney – Representative Assignments

- Retained by a bond insurer to restructure $330 million in bonds issued by a major utility to finance six peaking power facilities. As part of this assignment, analyses of individual plant financial performance and financing were conducted. This assignment resulted in the successful out-of-court restructuring of the bonds including the addition of covenants and an enhanced collateral position.

- Retained by a bond insurer to develop alternative restructuring plans for a major utility. This engagement included analyzing the company's ability to meet future debt obligations, comparing a planned equity rights offering to an outright sale of selected businesses, evaluating various Chapter 11 bankruptcy scenarios and valuing selected business units.

- Retained by a prepared food business to analyze the accounting for its trade promotions and allowance program as part of a mergers and acquisition dispute with the business' prior owner.

- Retained by the owners of a cold storage warehouse to quantify the profits lost for a business interruption claim dispute with their insurers. As part of this engagement, extensive analyses of operational statistics were prepared. In addition, expenses associated with the business interruption were analyzed for inclusion in the claim.

- Retained by a health insurance company to evaluate the accounting treatment of various balance sheet and income statement accounts related to an earn-out provision of a merger & acquisition dispute. This assignment included determining the appropriate GAAP treatment for various transactions and recalculating EBITDA applicable to the earn-out.

- Retained by a merchant power generator to perform a series of valuations as of different points in time historically and determine damages associated with alleged fraudulent conveyance claims of over $1 billion. As part of this assignment, analyses of the company's financial solvency were performed. In addition, numerous power plant acquisitions and financing deals were analyzed to determine if the company obtained reasonably equivalent value in the deals it undertook.

- Retained by a major candy manufacturer to evaluate a damage claim submitted by a supplier alleging lost profits caused by a breach of contract. This matter required an analysis of customer purchasing activity, production capacity, sales volumes and customer contracts.

- Retained to evaluate the financial performance of a major security services company. As part of this restructuring, reviewed the revenue and operating model of the firm, its historical financial and operating performance, valuation metrics and related industry statistics.

6

AlixPartners

Exhibit 1

# Louis G. Dudney - Testimony Experience - Last 4 Years

▸ Larry F. Robb, Individually, in Behalf of a Class of Minority Shareholders of 3CI Complete Compliance Corp., and Derivatively in Behalf of 3CI Complete Compliance Corp., v. Stericycle, Inc., et al. First Judicial District Court, Caddo Parish, Louisiana.

▸ Paul Oravec v. Sunny Isles Luxury Ventures L.C., et al., United States District Court, Southern District of Florida.

▸ Zimmer Technology, Inc. and Zimmer, Inc. v. Howmedica Osteonics Corp., United States District Court, Northern District of Indiana, South Bend Division.

▸ Robotic Workspace Technologies, Inc. v. ABB Inc. and ABB Automation Technologies AB, United States District Court for the Middle District of Florida.

▸ S.C. Johnson & Son, Inc. v. Milton E. Morris, et al., State of Wisconsin, Circuit Court, Racine County.

▸ IMG Worldwide, Inc. v. Casey Close, American Arbitration Association.

▸ Refco, Inc. et al., United States Bankruptcy Court, Southern District of New York.

▸ Cruz, et al. v. Wal-Mart Stores, Inc., Superior Court of the State of California, County of Los Angeles, Central District.

▸ Orthoarm, Inc., and G.A.C. International, Inc. v. Forestadent USA, Inc. and Dyna Flex, Ltd., United States District Court, Eastern District of Missouri, Eastern Division.

▸ Conseco Services, LLC v. James D. Massey and Margaret E. Massey, State of Indiana, Hamilton Superior Court

▸ In the Matter of the Ad Hoc Arbitration between Sears, Roebuck and Co. and Computer Sciences Corp., New York

▸ KIK International, Inc. v. Satish Shah, et al., American Arbitration Association, Chicago, IL.

▸ Marquette Ventures Partners II, L.P.; MVP II Affiliates Fund, L.P. v. Frank M. Leonesio and Melissa Leonesio, et al., Superior Court of the State of Arizona, County of Maricopa

▸ Bayer Clothing Group, Inc. v. Sears, Roebuck & Co. United States District Court for the Northern District of Illinois, Eastern Division

▸ Hospira, Inc. et al., v. The BOC Group, Inc., et al., Circuit Court of the Nineteenth Judicial Circuit, Lake County, Illinois

AlixPartners

7

Exhibit

# Louis G. Dudney - Testimony Experience - Last 4 Years

➤ *Dennis E. Murray, Sr., and DPM, Ltd. v. Conseco, Inc., and Conseco Services, LLC,* United States District Court, Southern District of Indiana, Indianapolis Division

➤ *The Bankruptcy Estate of KDC, Inc. by its Trustee, James W. McNeilly, JR., v. First Products, Inc., et al.* Wisconsin State Court, Eau Claire County.

➤ *United States v. Navarette Industries, et al.,* United States District Court, Northern District of Illinois

➤ *Vincent R. DePinto & DePinto Drywall & Painting, Inc. v. The Sherwin-Williams Company and Pulte Homes, Inc.* United States District Court, Northern District of Illinois, Eastern District

➤ *Hoosier Energy Rural Electrical Cooperative, Inc. v. John Hancock Life Insurance Company, et al.* United States District Court, Southern District of Indiana, Indianapolis Division

➤ *Fresh Express, Incorporated v. Beazley Syndicate 2623/623, At Lloyd's and QBE International Limited,* California Superior Court, County of Monterey

➤ *Metropolitan Water Reclamation District of Greater Chicago v. 664 N. Michigan LLC, et al.* Circuit Court of Cook County, Illinois, County Department, Chancery Division

8

AlixPartners

Exhibit 1

**Louis G. Dudney**
**Testimony - Last Four Years Addendum**

| Case Name | Forum | Judge | Subject of Testimony |
|---|---|---|---|
| Larry F. Robb, Individually, in Behalf of a Class of Minority Shareholders of 3CI Complete Compliance Corp., and Derivatively in Behalf of 3CI Complete Compliance Corp., v. Stericycle, Inc., et al. | Caddo Parish, Louisiana | S. Maurice Hicks | Minority shareholder dispute, Testified regarding issues of causation, damages and valuation |
| Paul Oravec v. Sunny Isles Luxury Ventures L.C., et al. | US District Court, Southern District of Florida | Patricia A. Seitz | Damages analyses related to disgorgement of the developer's profits for an ultra-luxury condominium development |
| Zimmer Technology, Inc. and Zimmer, Inc. v. Howmedica Osteonics Corp. | US District Court, Northern District of IN, South Bend | William C Lee | Damages related to the alleged infringement of certain medical device technology patents |
| Robotic Workspace Technologies, Inc. v. ABB Inc. and ABB Automation Technologies AB | US District Court, Middle District of FL | Thomas A. Wiseman, Jr | Damages resulting from claimed misappropriation of trade secrets and patent infringement |
| S.C. Johnson & Son, Inc. v. Milton E. Morris, et al. | State of Wisconsin, Circuit Court, Racine | Wayne Marik | Damages resulting from a fraud / kickback scheme |
| IMG Worldwide, Inc. v. Casey Close | American Arbitration Association | Not Applicable | Damages related to an employee contract dispute |
| Refco, Inc. et al. | US Bankruptcy Court, Southern District of NY | Robert D. Drain | Analyses related to tracing of funds, intercompany accounting and conclusions regarding impact to various related parties in a bankruptcy |
| Cruz, et al. v. Wal-Mart Stores, Inc. | Superior Court of the State of CA, County of Los Angeles, Central District | Emilie H. Elias | Accounting system structures, accounting data available for certain types of calculations, store profitability and personnel bonus calculations |
| Orthoarm, Inc., and G.A.C. International, Inc. v. Forestadent USA, Inc. and Dyna Flex, Ltd. | US District Court, Eastern District of MO, Eastern Division | Charles A. Shaw | Damages resulting from alleged patent infringement of medical technology |
| Conseco Services, LLC v. James D. Massey and Margaret E. Massey | State of Indiana, Hamilton Superior Court | Steven Nation | Damages, valuation, fraudulent transfer, and solvency analyses |
| In the Matter of the Ad Hoc Arbitration between Sears, Roebuck and Co. and Computer Sciences Corp. | Ad Hoc Arbitration | Not Applicable | Damages related to the alleged breach of a technology outsourcing agreement |
| KIK International, Inc. v. Satish Shah, et al. | American Arbitration Association, Chicago, IL | Not Applicable | Analysis of purchase price adjustments from working capital and indemnification claims |

Exhibit

Louis G. Dudney
Testimony - Last Four Years Addendum

| Case Name | Forum | Judge | Subject of Testimony |
|---|---|---|---|
| *Marquette Ventures Partners II, L.P.; MVP II Affiliates Fund, L.P. v. Frank M. Leonesio and Melissa Leonesio, et al.* | Superior Court of the State of AZ, County Maricopa | J. Kenneth Mangum | Valuation and damages analyses related to the purchase and sale of a chain of fitness centers |
| *Bayer Clothing Group, Inc. v. Sears, Roebuck & Co.* | US District Court, Northern District of IL, Eastern Division | Samuel Der-Yeghiayan | Damages analysis related to a private label clothing manufacturing contract |
| *Hospira, Inc. et al., v. The BOC Group, Inc.* | Circuit County of the 19th Judicial Circuit, Lake County, IL | Stephen E. Walter | Damages analysis related to the interruption in operations of a pharmaceutical manufacturing plant |
| *Dennis E. Murray, Sr., and DPM, Ltd. v. Conseco, Inc., and Conseco Services, LLC* | US District Court, Southern District of IN, Indianapolis Division | Larry J. McKinney | Damages, valuation, fraudulent transfer, and solvency analyses |
| *The Bankruptcy Estate of KDC, Inc. by its Trustee, James W. McNeilly, JR., v. First Products, Inc., et al.* | Wisconsin State Court, Eau Claire County | William M. Gabler | Damages causation, reasons for the failure of a start-up company, enterprise valuation |
| *United States v. Navarette Industries, et al.* | US District Court, Northern District of IL | Matthew F. Kennelly | Damages due to a fraud / kickback scheme related to a financial institution |
| *Hoosier Energy Rural Electrical Cooperative, Inc. v. John Hancock Life Insurance Company, et al.* | US District Court, Southern District of IN, Indianapolis Division | David Frank Hamilton | Analysis of liquidity and impact on company and damage calculation associated with contract, valuation and solvency |
| *Fresh Express, Incorporated v. Beazley Syndicate 2623/623, At Lloyd's and QBE International Limited* | California Superior Court, County of Monterey | Susan M. Dauphine | Damages analysis related to product recall |
| *Metropolitan Water Reclamation District of Greater Chicago v. 664 N. Michigan LLC, et al.* | Circuit Court of Cook County, IL, County Department, Chancery Division | Kathleen M. Pantle | Damages analysis related to construction delay claim |
| *Vincent R. DePinto & DePinto Drywall & Painting, Inc. v. The Sherwin-Williams Company and Pulte Homes, Inc.* | United States District Court, Northern District of Illinois, Eastern District | John Nordberg | Damages analysis related to construction projects |

**Exhibit 1**

## SUMMARY OF PUBLICATIONS

"Has Our 500-year-old Accounting System Finally Met Its Match in the New Economy", <u>The Journal of Corporate Renewal.</u> Vol. 13/No. 5. May 2000.

**Exhibit 2:**

**Schedule of the Trial Plaintiffs' Leaseback Agreements**

| Unit | Plaintiff | Purchase Date [1] | Lease Executed Date | Lease Effective Date | Lease Term (Years) | Source |
|------|-----------|-------------------|---------------------|----------------------|--------------------|--------|
| 4115 | Neil | 06/27/07 | 08/01/07 | 09/01/07 | 2 | NEIL 00130-00143 |
| 4236 | Copland / Hill [2] | 05/15/07 | N/A | N/A | N/A | No Hard Copy |
| 4322 | Baksbi | 07/17/07 | 07/17/07 | 07/01/07 | 2 | BAKSHI 00117-00130 |
| 4514 | Schroeder | 07/12/07 | 06/30/07 | 07/01/07 | 2 | SCHROEDER 00107-00120 |
| 4711 | Gonzales | 12/03/07 | 12/22/07 | 01/01/08 | 2 | GONZALES 00613-00625 |
| 4824 | Wooldridge | 07/17/07 | 07/25/07 | 08/01/07 | 2 | WOOLDRIDGE 00300-00313 |
| 4835 | Chan | 12/20/06 | 01/03/07 | 02/01/07 | 2 | CHAN 00034-00047 |
| 4913 | French | 07/16/07 | 07/26/07 | 08/01/07 | 2 | FRENCH 00243; 00245-00247; 01271-01282 |
| 4916 | Galante | 03/30/07 | 04/14/07 | 05/01/07 | 2 | GALANTE 01330-01343 |
| 4923 | Kooyman - Ron & Elaine | 11/10/06 | 11/22/06 | 01/01/07 | 2 | KOOYMAN 02740-02754 |
| 5036 | Colburn | 09/27/07 | 10/08/07 | 11/01/07 | 4 | COLBURN 00075-00091 |
| 5038 | Mejia | 03/29/07 | 05/10/07 | 06/01/07 | 2 | MEJIA 00215-00227 |
| 5111 | McMahon | 01/09/07 | 01/17/07 | 02/01/07 | 2 | MCMAHON 00195-00207 |
| 5125 | Palmer | 01/30/07 | 02/15/07 | 03/01/07 | 2 | PALMER 03323-03337 |
| 5137 | Konrath | 06/28/07 | 08/01/07 | 09/01/07 | 2 | KONRATH 00064-00077 |
| 5138 | Kooyman - Mark & Emi | 11/10/06 | 11/24/06 | 01/01/07 | 2 | KOOYMAN 02757-02771 |
| 5222 | Nguyen / Tran | 02/09/07 | 02/19/07 | 03/01/07 | 2 | NGUYEN 00028-00042; 00228-00229 |
| 5233 | Semi | 08/06/07 | 09/01/07 | 10/01/07 | 2 | SEMI 00054-00067 |
| 5327 | Kleiber | 04/20/07 | 05/17/07 | 06/01/07 | 2 | KLEIBER 00565-00579 |
| 5411 | Armstrong | 07/25/07 | 09/01/07 | 10/01/07 | 2 | ARMSTRONG 00079-00092 |
| 5433 | Schroeder | 08/24/07 | 09/01/07 | 10/01/07 | 2 | SCHROEDER 00179-00192 |

Notes:

1) Based on U.S. Department of Housing and Urban Development HUD-1 statements.

2) Kelly Copland does not recall whether she or Jason Hill signed a Leaseback Agreement, but she would like to receive the leaseback money they were promised.   (Deposition of Kelly Copland dated July 9, 2009, p. 129-130).



Exhibit 3:
Orlando Region Condominium
Monthly Median Price
(January 2005 - August 2009)

Period plaintiffs' purchased
Cay Club properties
(Nov 06 - Dec 07)

Median Sales Price

Sour    The Florida Association of Realtors and the University of Florida Real Estat~      ~arch Center.

**Exhibit 4:**
**IMG Academies Bradenton Market Analysis [2]**

| Property | Settlement Date | Seller (Grantor) | Buyer (Grantee) | Transaction Amount | % Change in Sales Price [1] | Deed Type |
|---|---|---|---|---|---|---|
| 5530 46th Court West Bradenton, FL 34210 | 01/10/06 | Academy Park Villas LLC | DC711 LLC | $841,900 | | SW- Special Warranty Deed |
| | 01/10/06 | DC711 LLC | Atkins, Susan E | $1,116,600 | | SW- Special Warranty Deed |
| | 02/23/09 | Atkins, Susan E | CitiMortgage Inc | $698,100 | -37.5% | De-Deed |
| 5522 46th Court West Bradenton, FL 34210 | 03/09/06 | Academy Park Villas LLC | DC711 LLC | $841,900 | | SW- Special Warranty Deed |
| | 05/27/06 | DC711 LLC | Weaver, Harry A III | $1,116,600 | | SW- Special Warranty Deed |
| | 02/05/08 | Weaver, Harry A III | Aurora Loan Services LLC | $1 | | CT- Certificate of Title |
| | 05/26/03 | Aurora Loan Services LLC | Plseinbeck, Michael | $303,000 | -53.4% | SW- Special Warranty Deed |
| 3401 54th Drive West #107, Bradenton, FL 34210 | 12/31/99 | Ysnig Language Study | Academy Resorts LLC | $1,200,000 | | De-Deed |
| | 03/09/06 | Academy Resorts LLC | DC711 LLC | $498,600 | | SW- Special Warranty Deed |
| | 06/20/06 | DC711 LLC | Columbus, Denise | $704,600 | | SW- Special Warranty Deed |
| | 12/23/08 | Columbus, Denise | Deutsche Bank National Trust Company | $1 | | CT- Certificate of Title |
| | 04/22/09 | Deutsche Bank National Trust Company | Horn, Stephen Thomas | $195,000 | -72.3% | SW- Special Warranty Deed |
| 3401 54th Drive West #203, Bradenton, FL 34210 | 12/31/99 | Ysnig Language Study | Academy Resorts LLC | $1,200,000 | | De-Deed |
| | 01/25/06 | Academy Resorts LLC | DC711 LLC | $498,600 | | SW- Special Warranty Deed |
| | 02/01/06 | DC711 LLC | Movey, Mark Steven | $704,600 | | SW- Special Warranty Deed |
| | 12/22/08 | Movey, Mark Steven | Aurora Loan Services LLC | $100 | | CT- Certificate of Title |
| | 04/20/09 | Aurora Loan Services LLC | Khalid, Mohammed Sadiq Hussein | $195,000 | -72.3% | SW- Special Warranty Deed |
| 3604 54th Drive West #201, Bradenton, FL 34210 | 01/25/06 | Bard, David S | Backland Associates LLLP | $1 | | WD-Warranty Deed |
| | 03/23/06 | Backland Associates LLLP | DC711 LLC | $475,100 | | SW- Special Warranty Deed |
| | 05/16/06 | DC711 LLC | Bogdan, Michael | $653,100 | | SW- Special Warranty Deed |
| | 11/14/08 | Bogdan, Michael | US Bank National Association | $100 | | CT- Certificate of Title |
| | 03/25/09 | US Bank National Association | Casella, Richard A | $225,000 | -65.5% | SW- Special Warranty Deed |
| 3604 54th Drive West #204, Bradenton, FL 34210 | 01/30/05 | Bard, David S | Backland Associates LLLP | $1 | | WD-Warranty Deed |
| | 03/24/06 | Backland Associates LLLP | DC711 LLC | $475,100 | | SW- Special Warranty Deed |
| | 03/31/06 | DC711 LLC | Brinson, John K | $653,100 | | SW- Special Warranty Deed |
| | 09/25/07 | Brinson, John K | US Bank National Association | $1,000 | | CT- Certificate of Title |
| | 04/14/08 | US Bank National Association | Portal Venture LLC | $350,000 | -46.4% | SW- Special Warranty Deed |
| 3566 54th Drive West, Lodge #105, Bradenton, FL 34210 | 01/18/06 | Bolletieri Development | DC711 LLC | $389,600 | | SW- Special Warranty Deed |
| | 01/18/06 | DC711 LLC | Patton, Brian V | $530,100 | | SW- Special Warranty Deed |
| | 06/12/06 | Patton, Brian V | Patton, Brian V | $1 | | CD-Corrective Deed |
| | 10/23/08 | Patton, Brian V | Homesales Inc. | $1 | | CT- Certificate of Title |
| | 06/18/09 | Homesales Inc. | JK&C Company LLC | $100,000 | -81.8% | SW- Special Warranty Deed |
| 3566 54th Drive West, Lodge #207, Bradenton, FL 34210 | 05/51/06 | Bolletieri Development | DC711 LLC | $567,200 | | SW- Special Warranty Deed |
| | 05/51/06 | DC711 LLC | Scofield, Nancy | $756,100 | | SW- Special Warranty Deed |
| | 01/23/08 | Scofield, Nancy | HSBC Bank USA National Association | $1 | | CT- Certificate of Title |
| | 09/11/08 | HSBC Bank USA National Association | HSBC Bank USA National Association | $10 | | Qt-Quit Claim Deed |
| | 09/17/08 | HSBC Bank USA National Association | Palencia, Jose Gregorio Morales | $356,300 | -52.3% | SW- Special Warranty Deed |
| 3566 54th Drive West, Lodge #204, Bradenton, FL 34210 | 03/07/06 | Bolletieri Development | DC711 LLC | $389,400 | | SW- Special Warranty Deed |
| | 03/07/06 | DC711 LLC | Smith, Craig S | $550,100 | | SW- Special Warranty Deed |
| | 06/30/08 | Smith, Craig S | US Bank National Association | $1 | | CT- Certificate of Title |
| | 05/25/09 | US Bank National Association. | Palencia, Jose Gregorio Morales | $139,000. | -74.7% | SW- Special Warranty Deed. |
| Average % Change in Sales | | | | | -41.9% | |

Notes:
1) Source is the Manatee County Property Appraiser website - www.manateepao.com.
2) Percentage change in the sales price from DC711LLC to a third party in 2008 and 2009 (Excluding sales $1,000 or less).

## Exhibit 5:

O'Rourke Damages Estimates Corrected for Market Decline and Membership Fees

| Unit | Plaintiff | Cay Club Purchase Amount | Purchase Month | Current Condo Pricing Month | Orlando Condo Market Decline %[1] | Market Decline | Current Estimated Market Value per Trial Plaintiffs' Appraiser K. Johnson | Leaseback Payments[2] | Corrected O'Rourke Damages Estimate |
|------|-----------|--------------------------|----------------|------------------------------|-----------------------------------|----------------|---------------------------------------------------------------------------|-----------------------|-------------------------------------|
| 4115 | Neil | $338,000 | Jun-07 | Aug-09 | -66.9% | ($226,276) | ($32,000) | ($67,600) | $12,124 |
| 4236 | Copland / Hill | $306,976 | May-07 | Aug-09 | -67.5% | ($207,299) | ($24,000) | $0 | $75,677 |
| 4322 | Bakshi | $343,400 | Jul-07 | Aug-09 | -66.5% | ($228,279) | ($32,000) | ($68,680) | $14,441 |
| 4514 | Schroeder | $289,000 | Jul-07 | Aug-09 | -66.5% | ($192,116) | ($24,000) | ($57,800) | $15,084 |
| 4711 | Gonzales | $443,721 | Dec-07 | Aug-09 | -66.0% | ($292,752) | ($50,000) | ($88,744) | $12,225 |
| 4824 | Wooldridge | $412,734 | Jul-07 | Aug-09 | -66.5% | ($274,370) | ($40,000) | ($42,547) | $55,818 |
| 4835 | Chan | $343,546 | Dec-06 | Aug-09 | -69.1% | ($237,275) | ($32,000) | ($12,154) | $62,118 |
| 4913 | French | $432,400 | Jul-07 | Aug-09 | -66.5% | ($287,443) | ($33,000) | ($86,480) | $25,477 |
| 4916 | Galante | $432,316 | Mar-07 | Aug-09 | -69.1% | ($298,940) | ($32,000) | $0 | $101,376 |
| 4923 | Kooyman - Ron & Elaine | $468,308 | Nov-06 | Aug-09 | -69.0% | ($323,253) | ($35,000) | ($66,270) | $43,785 |
| 5036 | Colburn | $311,600 | Sep-07 | Aug-09 | -66.8% | ($208,167) | ($24,000) | ($33,160) | $46,273 |
| 5038 | Mejia | $344,076 | Mar-07 | Aug-09 | -69.1% | ($237,924) | ($27,000) | ($3,000) | $76,152 |
| 5111 | McMahon | $429,904 | Jan-07 | Aug-09 | -69.2% | ($297,677) | ($50,000) | ($15,630) | $66,597 |
| 5125 | Palmer | $354,146 | Jan-07 | Aug-09 | -69.2% | ($245,220) | ($32,000) | ($50,115) | $26,811 |
| 5137 | Konrath | $423,500 | Jun-07 | Aug-09 | -66.9% | ($283,515) | ($40,000) | ($84,700) | $15,285 |
| 5138 | Kooyman - Mark & Emi | $473,608 | Nov-06 | Aug-09 | -69.0% | ($326,911) | ($53,000) | ($67,020) | $26,677 |
| 5222 | Nguyen/ Tran | $343,335 | Feb-07 | Aug-09 | -69.1% | ($237,278) | ($32,000) | ($2,000) | $72,057 |
| 5233 | Semi | $350,000 | Aug-07 | Aug-09 | -66.5% | ($232,839) | ($27,000) | ($70,000) | $20,161 |
| 5327 | Kleiber | $422,516 | Apr-07 | Aug-09 | -68.4% | ($289,186) | ($40,000) | $0 | $93,330 |
| 5411 | Armstrong | $300,900 | Jul-07 | Aug-09 | -66.5% | ($200,027) | ($22,000) | ($60,180) | $18,693 |
| 5433 | Schroeder | $360,000 | Aug-07 | Aug-09 | -66.5% | ($239,491) | ($27,000) | ($72,000) | $21,509 |
| Total | | $7,923,986 | | | | ($5,366,236) | ($708,000) | ($948,080) | $901,670 |

Notes:

1) Source:  The Florida Association of Realtors and the University of Florida Real Estate Research Center.

2) Leaseback Payments are based on the Cay Clubs' Leaseback Information schedule (Celebrity 0233- Celebrity 0238) for all Plaintiffs except Gonzales and McMahon.  Gonzales' Leaseback Payment is based on a Leaseback Payment disbursement schedule (Gonzales 00016).  McMahon's Leaseback Payment is based on the Deposition of Bryan McMahon dated September 24, 2009, page 182.

Exhibit 6:
O'Rourke's Corrected Fraudulent Inducement Analysis

| Unit | Plaintiff | Corrected O'Rourke's Represented Market Value | Market Decline [1] | O'Rourke's Delivered Market Value | Corrected O'Rourke Damages Estimate |
|------|-----------|-----------|-----------|-----------|-----------|
| 4115 | Neil | $270,400 | ($226,276) | ($32,000) | $12,124 |
| 4236 | Copland / Hill | $306,976 | ($207,299) | ($24,000) | $75,677 |
| 4322 | Bakshi | $274,720 | ($228,279) | ($32,000) | $14,441 |
| 4514 | Schroeder | $231,200 | ($192,116) | ($24,000) | $15,084 |
| 4711 | Gonzales 6 | $354,977 | ($292,752) | ($50,000) | $12,225 |
| 4824 | Wooldridge | $370,187 | ($274,370) | ($40,000) | $55,818 |
| 4835 | Chan | $331,392 | ($237,275) | ($32,000) | $62,118 |
| 4913 | French | $345,920 | ($287,443) | ($33,000) | $25,477 |
| 4916 | Galante | $432,316 | ($298,940) | ($32,000) | $101,376 |
| 4923 | Kooyman - Ron & Elaine | $402,038 | ($323,253) | ($35,000) | $43,785 |
| 5036 | Colburn | $278,440 | ($208,167) | ($24,000) | $46,273 |
| 5038 | Mejia | $341,076 | ($237,924) | ($27,000) | $76,152 |
| 5111 | McMahon | $414,274 | ($297,677) | ($50,000) | $66,597 |
| 5125 | Palmer | $304,031 | ($245,220) | ($32,000) | $26,811 |
| 5137 | Konrath | $338,800 | ($283,515) | ($40,000) | $15,285 |
| 5138 | Kooyman - Mark & Emi | $406,588 | ($326,911) | ($53,000) | $26,677 |
| 5222 | Nguyen/Tran | $341,335 | ($237,278) | ($32,000) | $72,057 |
| 5233 | Semi | $280,000 | ($232,839) | ($27,000) | $20,161 |
| 5327 | Kleiber | $422,516 | ($289,186) | ($40,000) | $93,330 |
| 5411 | Armstrong | $240,720 | ($200,027) | ($22,000) | $18,693 |
| 5433 | Schroeder | $288,000 | ($239,491) | ($27,000) | $21,509 |
| Total | | $6,975,906 | ($5,366,236) | ($708,000) | $901,670 |

Notes:
1) Source:   The Florida Association of Realtors and the University of Florida Real Estate Research Center.

**Exhibit 7:**

**O'Rourke Conversion and Civil Theft Damages Estimates Corrected for Market Decline and Exclusion of Membership Fee**

| Unit | Plaintiff | Cay Club Purchase Amount | Leaseback Payments [1] | Market Decline [2] | Current Estimated Market Value per Trial Plaintiffs' Appraiser K. Johnson | Total Deduction | Corrected O'Rourke Damages Estimate |
|---|---|---|---|---|---|---|---|
| 4115 | Neil Copland / Hill | $338,000 | ($67,600) | ($226,276) | ($32,000) | ($325,876) | $12,124 |
| 4236 | | $306,976 | $0 | ($207,299) | ($24,000) | ($231,299) | $75,677 |
| 4322 | Bakshi | $343,400 | ($68,680) | ($228,279) | ($32,000) | ($328,959) | $14,441 |
| 4514 | Schroeder | $289,000 | ($57,800) | ($192,116) | ($24,000) | ($273,916) | $15,084 |
| 4711 | Gonzales | $443,721 | ($88,744) | ($292,752) | ($50,000) | ($431,496) | $12,225 |
| 4824 | Wooldridge | $412,734 | ($42,547) | ($274,370) | ($40,000) | ($356,916) | $55,818 |
| 4835 | Chan | $343,546 | ($12,154) | ($237,275) | ($32,000) | ($281,428) | $62,118 |
| 4913 | French | $432,400 | ($86,480) | ($287,443) | ($33,000) | ($406,923) | $25,477 |
| 4916 | Galante | $432,316 | $0 | ($298,940) | ($32,000) | ($330,940) | $101,376 |
| 4923 | Kooyman - Ron & Elaine | $468,308 | ($66,270) | ($323,253) | ($35,000) | ($424,523) | $43,785 |
| 5036 | Colburn | $311,600 | ($33,160) | ($208,167) | ($24,000) | ($265,327) | $46,273 |
| 5038 | Mejia | $344,076 | ($3,000) | ($237,924) | ($27,000) | ($267,924) | $76,152 |
| 5111 | McMahon | $429,904 | ($15,630) | ($297,677) | ($50,000) | ($363,307) | $66,597 |
| 5125 | Palmer | $354,146 | ($50,115) | ($245,220) | ($32,000) | ($327,335) | $26,811 |
| 5137 | Konrath | $423,500 | ($84,700) | ($283,515) | ($40,000) | ($408,215) | $15,285 |
| 5138 | Kooyman - Mark & Emi | $473,608 | ($67,020) | ($326,911) | ($53,000) | ($446,931) | $26,677 |
| 5222 | Nguyen/ Tran | $343,335 | ($2,000) | ($237,278) | ($32,000) | ($271,278) | $72,057 |
| 5233 | Semi | $350,000 | ($70,000) | ($232,839) | ($27,000) | ($329,839) | $20,161 |
| 5327 | Kleiber | $422,516 | $0 | ($289,186) | ($40,000) | ($329,186) | $93,330 |
| 5411 | Armstrong | $300,900 | ($60,180) | ($200,027) | ($22,000) | ($282,207) | $18,693 |
| 5433 | Schroeder | $360,000 | ($72,000) | ($239,491) | ($27,000) | ($338,491) | $21,509 |
| Total | | $7,923,986 | ($948,080) | ($5,366,236) | ($708,000) | ($7,022,316) | $901,670 |

Notes:

1) Leaseback Payments are based on the Cay Clubs' Leaseback Information schedule (Celebrity 0233 - Celebrity 0238) for all Plaintiffs except Gonzales and McMahon. Gonzales' Leaseback Payment is based on a Leaseback Payment disbursement schedule (Gonzales 00016). McMahon's Leaseback Payment is based on the Deposition of Bryan McMahon dated September 24, 2009, page 182.

2) Source: The Florida Association of Realtors and the University of Florida Real Estate Research Center.

**Exhibit 8:**
**O'Rourke's Corrected Net Cash Expenditures Analysis**

| Unit | Plaintiff | Investor Cash Inflow | | | Investor Cash Outflow | | | | | | Corrected O'Rourke Net Cash Expenditures |
|------|-----------|----------------------|---|---|-----------------------|---|---|---|---|---|---|
| | | Leaseback Payments [1] | Rent Recv'd [2] | Total Cash Receipts | Cash Paid per HUD Statement [3] | Cash Mortgage Interest [4] | Property Taxes [5] | Cash Condo Association Fees Paid [6] | Insurance, Repairs, and Other Escrow Payments [7] | Total Cash Expenditures | |
| 4115 | Neil | $67,600 | $0 | $67,600 | $19,949 | $12,940 | $2,218 | $1,509 | $0 | $36,615 | $30,985 |
| 4236 | Copland / Hill | $0 | $7,689 | $7,689 | $15,671 | $12,847 | $4,375 | $2,021 | $3,373 | $38,288 | ($30,599) |
| 4322 | Bakshi | $68,680 | $1,430 | $70,110 | $77,517 | $38,641 | $6,562 | $1,509 | $593 | $124,821 | ($54,711) |
| 4514 | Schroeder | $57,800 | $0 | $57,800 | $20,329 | $10,396 | $1,638 | $1,962 | $0 | $34,325 | $23,475 |
| 4711 | Gonzales | $88,744 | $0 | $88,744 | $60,781 | $7,476 | $6,353 | $0 | $322 | $74,932 | $13,812 |
| 4824 | Wooldridge | $42,547 | $0 | $42,547 | $94,265 | $21,745 | $5,298 | $1,692 | $1,201 | $124,200 | ($81,654) |
| 4835 | Chan | $12,154 | $0 | $12,154 | $13,641 | $43,616 | $5,729 | $5,211 | $0 | $68,197 | ($56,043) |
| 4913 | French | $86,480 | $0 | $86,480 | ($8,767) | $26,494 | $3,786 | $3,212 | $0 | $24,725 | $61,755 |
| 4916 | Galante | $0 | $0 | $0 | $43,239 | $25,986 | $6,697 | $0 | $1,562 | $77,485 | ($77,485) |
| 4923 | Kooyman - Ron & Elaine | $66,270 | $0 | $66,270 | $49,855 | $40,068 | $7,650 | $5,963 | $1,539 | $105,075 | ($38,805) |
| 5036 | Colburn | $33,160 | $0 | $33,160 | $28,091 | $1,710 | $1,123 | $489 | $6,457 | $37,870 | ($4,710) |
| 5038 | Mejia | $3,000 | $3,250 | $6,250 | $34,884 | $11,578 | $4,715 | $1,713 | $1,785 | $54,674 | ($48,424) |
| 5111 | McMahon | $15,630 | $22,380 | $38,010 | $32,909 | $20,841 | $6,103 | $1,200 | $0 | $61,052 | ($23,042) |
| 5125 | Palmer | $50,115 | $0 | $50,115 | $16,530 | $22,752 | $5,260 | $3,367 | $0 | $47,910 | $2,205 |
| 5137 | Konrath | $84,700 | $0 | $84,700 | $18,412 | $17,043 | $5,280 | $2,599 | $0 | $43,334 | $41,366 |
| 5138 | Kooyman - Mark & Emi | $67,020 | $0 | $67,020 | $50,514 | $35,321 | $7,399 | $4,933 | $742 | $98,909 | ($31,889) |
| 5222 | Nguyen/Tran | $2,000 | $0 | $2,000 | $33,025 | $41,407 | $5,355 | $6,054 | $0 | $85,842 | ($83,842) |
| 5233 | Semi | $70,000 | $0 | $70,000 | $27,104 | $11,845 | $5,740 | $1,390 | $0 | $46,080 | $23,920 |
| 5327 | Kleiber | $0 | $13,770 | $13,770 | $25,362 | $40,535 | $5,616 | $4,980 | $0 | $76,494 | ($62,724) |
| 5411 | Armstrong | $60,180 | $0 | $60,180 | $11,712 | $14,340 | $1,423 | $1,879 | $0 | $29,353 | $30,827 |
| 5433 | Schroeder | $72,000 | $0 | $72,000 | $42,033 | $12,145 | $1,317 | $4,326 | $0 | $59,821 | $12,179 |
| Total | | $948,080 | $48,519 | $996,599 | $707,058 | $469,725 | $99,658 | $56,009 | $17,573 | $1,350,004 | ($353,405) |

Notes:
1) Leaseback Payments are based on the Cay Clubs' Leaseback Information schedule (Celebrity 0233- Celebrity 0238) for all Plaintiffs except Gonzales and McMahon.  Gonzales'
Leaseback Payment is based on a Leaseback Payment disbursement schedule (Gonzales  00016).  McMahon's Leaseback Payment is based on the Deposition of Bryan McMahon dated
September 24, 2009, page 182.
2)  Based on deposition testimony and lease agreements where available.
3)  Based on U.S. Department of Housing and Urban Development HUD-1 statements.
4)  Mortgage Interest Paid is based on mortgage statements provided.  In the absence of mortgage statements, mortgage interest paid is calculated based on discovery and deposition
testimony.
5)  Property Taxes Paid is based on mortgage and tax statements provided.  I excluded property taxes paid that were included in the Cash Paid per HUD Statements.
6)  Condo Association Fees Paid is based on condo association statements and payment support provided.  In the absence of payment support, Condo Association Fees Paid is calculated
based on discovery and deposition testimony.
7)  Based on invoice and payment support provided.

**Exhibit 9;**

| Unit | Plaintiff | Total Mortgage Principal Outstanding [1] | O'Rourke FDUTPA Damages (Exhibit 1) | O'Rourke Fraudulent Inducement (Exhibit 2) | O'Rourke Conversion and Civil Theft (Exhibit 3) | O'Rourke FDUTPA Damages (Exhibit 1) | O'Rourke Fraudulent Inducement (Exhibit 2) | O'Rourke Conversion and Civil Theft (Exhibit 3) |
|---|---|---|---|---|---|---|---|---|
| | | | | | | Mortgage Principal Outstanding as a % of O'Rourke's Damages Estimates | | |
| 4115 | Neil | $338,562 | $258,400 | $347,167 | $291,963 | 131% | 98% | 116% |
| 4236 | Copland / Hill | $311,549 | $302,976 | $385,447 | $328,712 | 103% | 81% | 95% |
| 4322 | Bakshi | $290,720 | $262,720 | $346,450 | $296,323 | 111% | 84% | 98% |
| 4514 | Schroeder | $293,550 | $227,200 | $287,996 | $252,532 | 129% | 102% | 116% |
| 4711 | Gonzales | $398,106 | $304,977 | $384,071 | $354,977 | 131% | 104% | 112% |
| 4824 | Wooldridge | $346,187 | $350,187 | $451,308 | $392,015 | 99% | 77% | 88% |
| 4835 | Chan | $344,349 | $319,392 | $413,949 | $353,319 | 108% | 83% | 97% |
| 4913 | French | $472,305 | $332,920 | $456,825 | $366,589 | 142% | 103% | 129% |
| 4916 | Galante | $402,800 | $420,316 | $518,982 | $454,691 | 96% | 78% | 89% |
| 4923 | Kooyman - Ron & Elaine | $439,477 | $387,038 | $509,744 | $424,621 | 114% | 86% | 103% |
| 5036 | Colburn | $298,142 | $274,440 | $335,357 | $299,863 | 109% | 89% | 99% |
| 5038 | Mejia | $331,730 | $334,076 | $436,084 | $363,006 | 99% | 76% | 91% |
| 5111 | McMahon | $404,913 | $384,274 | $481,510 | $436,655 | 105% | 84% | 93% |
| 5125 | Palmer | $373,970 | $292,031 | $425,635 | $326,014 | 128% | 88% | 115% |
| 5137 | Konrath | $420,900 | $318,800 | $411,026 | $360,743 | 132% | 102% | 117% |
| 5138 | Kooyman - Mark & Emi | $444,197 | $373,588 | $495,310 | $429,199 | 119% | 90% | 103% |
| 5222 | Nguyen/Tran | $325,708 | $329,335 | $414,471 | $363,241 | 99% | 79% | 90% |
| 5233 | Semi | $332,745 | $273,000 | $344,346 | $301,603 | 122% | 97% | 110% |
| 5327 | Kleiber | $420,375 | $402,516 | $507,629 | $444,858 | 104% | 83% | 94% |
| 5411 | Armstrong | $304,855 | $238,720 | $305,720 | $262,106 | 128% | 100% | 116% |
| 5433 | Schroeder | $340,341 | $281,000 | $355,886 | $309,691 | 121% | 96% | 110% |
| **Total** | | **$7,635,481** | **$6,667,907** | **$8,614,913** | **$7,412,721** | **115%** | **89%** | **103%** |

Notes:
1) Based on most current mortgage statement and/or loan payoff quote included in discovery.

**Exhibit 10:**

**List of Documents Reviewed and/or Relied Upon**

| | | | | | |
|---|---|---|---|---|---|
| Armstrong | 00001 | 00001 | Kooyman | 02137 | 02143 |
| Armstrong | 00003 | 00005 | Kooyman | 02170 | 02175 |
| Armstrong | 00007 | 00009 | Kooyman | 02178 | 02222 |
| Armstrong | 00022 | 00092 | Kooyman | 02262 | 02306 |
| Armstrong | 00112 | 00113 | Kooyman | 02325 | 02330 |
| Armstrong | 00115 | 00115 | Kooyman | 02342 | 02348 |
| Armstrong | 00117 | 00142 | Kooyman | 02358 | 02383 |
| Armstrong | 00149 | 00154 | Kooyman | 02391 | 02393 |
| Armstrong | 00173 | 00174 | Kooyman | 02396 | 02399 |
| Armstrong | 00177 | 00178 | Kooyman | 02401 | 02410 |
| Armstrong | 00202 | 00208 | Kooyman | 02413 | 02413 |
| Armstrong | 00210 | 00227 | Kooyman | 02419 | 02419 |
| Armstrong | 00229 | 00230 | Kooyman | 02423 | 02424 |
| Armstrong | 00233 | 00261 | Kooyman | 02428 | 02432 |
| Armstrong | 00265 | 00269 | Kooyman | 02436 | 02439 |
| Armstrong | 00290 | 00291 | Kooyman | 02446 | 02500 |
| Armstrong | 00293 | 00300 | Kooyman | 02507 | 02507 |
| Armstrong | 00304 | 00304 | Kooyman | 02510 | 02510 |
| Armstrong | 00306 | 00329 | Kooyman | 02512 | 02517 |
| Armstrong | 00332 | 00355 | Kooyman | 02519 | 02527 |
| Armstrong | 00366 | 00399 | Kooyman | 02532 | 02544 |
| Armstrong | 00402 | 00409 | Kooyman | 02579 | 02582 |
| Armstrong | 00414 | 00418 | Kooyman | 02586 | 02588 |
| Armstrong | 00421 | 00426 | Kooyman | 02592 | 02594 |
| Armstrong | 00430 | 00431 | Kooyman | 02596 | 02622 |
| Armstrong | 00435 | 00435 | Kooyman | 02624 | 02632 |
| Armstrong | 00438 | 00438 | Kooyman | 02640 | 02641 |
| Armstrong | 00448 | 00453 | Kooyman | 02644 | 02645 |
| Armstrong | 00472 | 00473 | Kooyman | 02647 | 02647 |
| Armstrong | 00480 | 00519 | Kooyman | 02653 | 02670 |
| Armstrong | 00521 | 00521 | Kooyman | 02674 | 02676 |
| Armstrong | 00525 | 00540 | Kooyman | 02678 | 02680 |
| Armstrong | 00542 | 00624 | Kooyman | 02731 | 02755 |
| Armstrong | 01191 | 01223 | Kooyman | 02757 | 02771 |
| Armstrong | 01777 | 01780 | Kooyman | 02773 | 02773 |
| Bakshi | 00017 | 00064 | Kooyman | 02807 | 02807 |
| Bakshi | 00067 | 00069 | Kooyman | 02822 | 02887 |
| Bakshi | 00079 | 00079 | Kooyman | 03068 | 03101 |
| Bakshi | 00081 | 00134 | Kooyman | 03276 | 03339 |
| Bakshi | 00138 | 00172 | Kooyman | 03476 | 03509 |
| Bakshi | 00195 | 00196 | Kooyman | 03513 | 03516 |
| Bakshi | 00219 | 00229 | Kooyman | 03519 | 03587 |
| Bakshi | 00369 | 00373 | Kooyman | 03646 | 03648 |
| Bakshi | 00505 | 00527 | Kooyman | 03650 | 03651 |
| Bakshi | 00531 | 00532 | Kooyman | 03743 | 03748 |
| Bakshi | 00538 | 00577 | Kooyman | 03753 | 03796 |
| Bakshi | 00758 | 00767 | Kooyman | 03798 | 03822 |
| BOA | 00001 | 02470 | Kooyman | 014323 | 014323 |
| Cay | 00001 | 00030 | McMahon | 00032 | 00077 |
| Celebrity | 0146 | 0169 | McMahon | 00080 | 00112 |
| Celebrity | 0231 | 0245 | McMahon | 00195 | 00207 |
| Celebrity | 0326 | 0327 | McMahon | 00977 | 00983 |

**Exhibit 10:**
**List of Documents Reviewed and/or Relied Upon**

| | | | | | |
|---|---|---|---|---|---|
| Chan | 00001 | 00047 | Meja | 00008 | 00010 |
| Chan | 00051 | 00051 | Meja | 00035 | 00036 |
| Chan | 00090 | 00098 | Meja | 00048 | 00051 |
| Chan | 00111 | 00114 | Meja | 00095 | 00095 |
| Chan | 00116 | 00130 | Meja | 00100 | 00100 |
| Chan | 00818 | 00819 | Meja | 00111 | 00111 |
| Chan | 00826 | 00829 | Meja | 00143 | 00144 |
| Chan | 00840 | 00852 | Meja | 00153 | 00156 |
| Chan | 00883 | 00883 | Meja | 00165 | 00167 |
| Chan | 00889 | 00905 | Meja | 00211 | 00211 |
| CHERRYCREEK | 00001 | 00342 | Meja | 00213 | 00213 |
| CITI | 00001 | 00732 | Meja | 00215 | 00259 |
| Colburn | 00040 | 00056 | Meja | 00265 | 00266 |
| Colburn | 00075 | 00091 | Meja | 00283 | 00292 |
| Colburn | 00094 | 00873 | Meja | 00299 | 00300 |
| Colburn | 00889 | 00905 | Meja | 00304 | 00317 |
| Colburn | 00908 | 00908 | Meja | 00341 | 00452 |
| Colburn | 00923 | 00923 | Meja | 00454 | 00464 |
| Colburn | 00926 | 00933 | Meja | 01072 | 01105 |
| Colburn | 00937 | 00939 | Meja | 01109 | 01116 |
| Colburn | 00941 | 00946 | Meja | 01137 | 01138 |
| Colburn | 00970 | 00977 | Meja | 01172 | 01177 |
| Colburn | 00979 | 00981 | NC | 000000.0001 | 000000.0004 |
| Colburn | 00991 | 01002 | NC | 000001 | 001578 |
| Colburn | 01005 | 01007 | Neil | 00001 | 00018 |
| Colburn | 01012 | 01015 | Neil | 00034 | 00044 |
| Copland | 00001 | 00001 | Neil | 00067 | 00128 |
| Copland | 00010 | 00041 | Neil | 00130 | 00143 |
| Copland | 00067 | 00067 | Neil | 00152 | 00185 |
| Copland | 0924 | 01084 | Neil | 00198 | 00204 |
| Copland | 01092 | 01098 | Neil | 00208 | 00209 |
| Copland | 01100 | 01142 | Neil | 00211 | 00222 |
| Copland | 01144 | 01166 | Neil | 00232 | 00233 |
| DCG | 00001 | 00217 | Neil | 00235 | 00238 |
| French | 00002 | 00015 | Neil | 00240 | 00255 |
| French | 00021 | 00023 | Neil | 00260 | 00283 |
| French | 00053 | 00083 | Neil | 00290 | 00374 |
| French | 0088 | 0089 | Nguyen | 00007 | 00007 |
| French | 00090 | 00113 | Nguyen | 00028 | 00042 |
| French | 00168 | 00200 | Nguyen | 00058 | 00090 |
| French | 00207 | 00223 | Nguyen | 00210 | 00279 |
| French | 00243 | 00247 | Nguyen | 00284 | 00284 |
| French | 00260 | 00264 | Nguyen | 00335 | 00347 |
| French | 00280 | 00284 | Nguyen | 00349 | 00456 |
| French | 00312 | 00314 | Nguyen | 00458 | 00458 |
| French | 00329 | 00397 | Nguyen | 00461 | 00461 |
| French | 00399 | 00399 | Nguyen | 00467 | 00478 |
| French | 01243 | 01282 | Nguyen | 00481 | 00484 |
| French | 01310.0007 | 01310.0007 | Nguyen | 00607 | 00611 |
| French | 01311 | 01322 | Nguyen | 00613 | 00613 |
| Galante | 00592 | 00595 | Nguyen | 00629 | 00632 |
| Galante | 00598 | 00598 | Nguyen | 00637 | 00645 |
| Galante | 00601 | 00611 | Nguyen | 00656 | 00668 |

| Exhibit 10: | | | | | |
|---|---|---|---|---|---|
| List of Documents Reviewed and/or Relied Upon | | | | | |
| Galante | 00615 | 00625 | Nguyen | 00674 | 00689 |
| Galante | 00629 | 00659 | Nguyen | 00724 | 00725 |
| Galante | 00739 | 00755 | Nguyen | 00737 | 00740 |
| Galante | 00760 | 00763 | Nguyen | 00780 | 00785 |
| Galante | 00767 | 00811 | Nguyen | 00787 | 00801 |
| Galante | 00834 | 00866 | Nguyen | 00869 | 00912 |
| Galante | 00989 | 00998 | Palmer | 00001 | 00028 |
| Galante | 01049 | 01066 | Palmer | 00040 | 00040 |
| Galante | 01153 | 01153 | Palmer | 00044 | 00067 |
| Galante | 01158 | 01159 | Palmer | 00075 | 00161 |
| Galante | 01164 | 01164 | Palmer | 00181 | 00186 |
| Galante | 01166 | 01167 | Palmer | 00188 | 00192 |
| Galante | 01170 | 01170 | Palmer | 00197 | 00227 |
| Galante | 01207 | 01207 | Palmer | 00260 | 00297 |
| Galante | 01212 | 01212 | Palmer | 00323 | 00337 |
| Galante | 01217 | 01218 | Palmer | 00339 | 00342 |
| Galante | 01235 | 01238 | Palmer | 00349 | 00353 |
| Galante | 01330 | 01343 | Palmer | 00366 | 00372 |
| Galante | 01346 | 01350 | Palmer | 00409 | 00451 |
| Galante | 01356 | 01396 | Palmer | 00456 | 00456 |
| Galante | 01397 | 01399 | Palmer | 00528 | 00530 |
| Galante | 01407 | 01407 | Palmer | 00548 | 00587 |
| Galante | 01412 | 01412 | Palmer | 00598 | 00604 |
| Galante | 01419 | 01419 | Palmer | 00611 | 00611 |
| Galante | 01422 | 01422 | Palmer | 00615 | 00619 |
| Galante | 01833 | 01841 | Palmer | 00636 | 00638 |
| GREENPOINT | 00001 | 00013 | Palmer | 00642 | 00642 |
| Gonzales | 00003 | 00018 | Palmer | 00753 | 00762 |
| Gonzales | 00038 | 00042 | Palmer | 00765 | 00773 |
| Gonzales | 00245 | 00245 | Palmer | 00776 | 00796 |
| Gonzales | 00409 | 00442 | PARAGON | 00001 | 00118 |
| Gonzales | 00532 | 00534 | Plaintiffs | 00203 | 00217 |
| Gonzales | 00568 | 00568 | Plaintiffs | 00803 | 01044 |
| Gonzales | 00613 | 00625 | Schroeder | 00001 | 00034 |
| Gonzales | 00762 | 00779 | Schroeder | 00041 | 00062 |
| Gonzales | 00783 | 00788 | Schroeder | 00083 | 00105 |
| Gonzales | 00800 | 00828 | Schroeder | 00107 | 00120 |
| HSBC | 00001 | 00053 | Schroeder | 00136 | 00136 |
| JPMC | 00001 | 04604 | Schroeder | 00179 | 00206 |
| JPM/GASTALDI | 00001 | 00064 | Schroeder | 00218 | 00222 |
| Kleiber | 0160 | 0161 | Schroeder | 00225 | 00231 |
| Kleiber | 00565 | 00579 | Schroeder | 00242 | 00316 |
| Kleiber | 00581 | 00617 | Schroeder | 00318 | 00339 |
| Kleiber | 00938 | 00939 | Schroeder | 00351 | 00434 |
| Kleiber | 00942 | 00949 | Schroeder | 01124 | 01125 |
| Kleiber | 00956 | 00959 | Schroeder | 01130 | 01133 |
| Kleiber | 00976 | 01011 | Schroeder | 01144 | 01145 |
| Kleiber | 00998 | 01005 | Schroeder | 01149 | 01154 |
| Kleiber | 01016 | 01024 | Schroeder | 01163 | 01173 |
| Kleiber | 01026 | 01059 | Schroeder | 01178 | 01178 |
| Kleiber | 01062 | 01062 | Schroeder | 01180 | 01183 |
| Kleiber | 01066 | 01217 | Schroeder | 01186 | 01188 |
| Kleiber | 01234 | 01251 | Schroeder | 01192 | 01192 |

**Exhibit 10:**
**List of Documents Reviewed and/or Relied Upon**

| | | | | | | |
|---|---|---|---|---|---|---|
| Kleiber | 01295 | 01295 | Schroeder | 01195 | | 01195 |
| Kleiber | 01329 | 01370 | Schroeder | 01197 | | 01198 |
| Konrath | 00001 | 00001 | Schroeder | 01199 | | 01213 |
| Konrath | 00011 | 00059 | Schroeder | 01263 | | 01296 |
| Konrath | 00061 | 00061 | Schroeder | 01323 | | 01351 |
| Konrath | 00064 | 00077 | Schroeder | 01371 | | 01383 |
| Konrath | 00079 | 00110 | SFCU | 00001 | | 00014 |
| Konrath | 00113 | 00115 | Semi | 00001 | | 00036 |
| Konrath | 00158 | 00163 | Semi | 00054 | | 00067 |
| Konrath | 00165 | 00170 | Semi | 00213 | | 00213 |
| Konrath | 00172 | 00217 | Semi | 00218 | | 00228 |
| Konrath | 00180 | 00217 | Semi | 00243 | | 00243 |
| Konrath | 00281 | 00282 | Semi | 00248 | | 00248 |
| Konrath | 00285 | 00286 | Semi | 00250 | | 00262 |
| Konrath | 00289 | 00289 | Semi | 00265 | | 00280 |
| Konrath | 00362 | 00375 | Semi | 00288 | | 00290 |
| Konrath | 00436 | 00442 | Semi | 00323 | | 00327 |
| Konrath | 00445 | 00445 | Semi | 00347 | | 00348 |
| Konrath | 00447 | 00449 | Semi | 00368 | | 00368 |
| Konrath | 00451 | 00456 | Semi | 00379 | | 00379 |
| Konrath | 00517 | 00521 | Semi | 00381 | | 00381 |
| Konrath | 00563 | 00563 | Semi | 00383 | | 00383 |
| Konrath | 00571 | 00573 | Semi | 00385 | | 00385 |
| Konrath | 00577 | 00577 | Semi | 00397 | | 00398 |
| Konrath | 00580 | 00585 | Semi | 00418 | | 00427 |
| Konrath | 00611 | 00618 | Semi | 00431 | | 00431 |
| Konrath | 00621 | 00646 | Semi | 00433 | | 00433 |
| Konrath | 01514 | 01565 | Semi | 00436 | | 00437 |
| Konrath | 01577 | 01591 | Semi | 00457 | | 00457 |
| Kooyman | 00261 | 00304 | Semi | 00462 | | 00462 |
| Kooyman | 00326 | 00326 | Semi | 00466 | | 00469 |
| Kooyman | 00331 | 00332 | Semi | 00471 | | 00472 |
| Kooyman | 00336 | 00372 | Semi | 00483 | | 00483 |
| Kooyman | 00382 | 00384 | Semi | 00511 | | 00520 |
| Kooyman | 00389 | 00393 | Semi | 00529 | | 00561 |
| Kooyman | 00399 | 00400 | Semi | 01126 | | 01150 |
| Kooyman | 00404 | 00406 | Semi | 01189 | | 01201 |
| Kooyman | 00412 | 00412 | Semi | 01220 | | 01227 |
| Kooyman | 00425 | 00426 | Sunvest | 000785 | | 000797 |
| Kooyman | 00449 | 00455 | Sunvest | 001102 | | 001107 |
| Kooyman | 00457 | 00459 | Sunvest | 001161 | | 001167 |
| Kooyman | 00501 | 00501 | Sunvest | 001517 | | 001523 |
| Kooyman | 00623 | 00627 | Sunvest | 001591 | | 001593 |
| Kooyman | 00643 | 00654 | Sunvest | 001625 | | 001626 |
| Kooyman | 00724 | 00726 | Sunvest | 001830 | | 001835 |
| Kooyman | 00729 | 00730 | Sunvest | 001849 | | 001855 |
| Kooyman | 00739 | 00740 | Sunvest | 001908 | | 001913 |
| Kooyman | 00751 | 00754 | Sunvest | 002064 | | 002076 |
| Kooyman | 00759 | 00760 | THNBRG | 000000.0001 | | 000000.0004 |
| Kooyman | 00766 | 00767 | THNBRG | 000001 | | 000580 |
| Kooyman | 00838 | 00838 | WFC | 0000_001 | | 0000_003 |
| Kooyman | 00881 | 00887 | WFC | 0001 | | 0246 |
| Kooyman | 00889 | 00908 | Wooldridge | 00030 | | 00032 |

| Exhibit 10: | | |
|---|---|---|
| List of Documents Reviewed and/or Relied Upon | | |

| | | | | | |
|---|---|---|---|---|---|
| Kooyman | 00927 | 00949 | Wooldridge | 00047 | 00087 |
| Kooyman | 00957 | 00958 | Wooldridge | 00089 | 00089 |
| Kooyman | 01014 | 01015 | Wooldridge | 00090 | 00124 |
| Kooyman | 01037 | 01046 | Wooldridge | 00126 | 00127 |
| Kooyman | 01073 | 01078 | Wooldridge | 00129 | 00141 |
| Kooyman | 01094 | 01094 | Wooldridge | 00153 | 00162 |
| Kooyman | 01347 | 01347 | Wooldridge | 00164 | 00165 |
| Kooyman | 01349 | 01350 | Wooldridge | 00167 | 00168 |
| Kooyman | 01468 | 01469 | Wooldridge | 00171 | 00173 |
| Kooyman | 01487 | 01492 | Wooldridge | 00175 | 00277 |
| Kooyman | 01514 | 01516 | Wooldridge | 00300 | 00313 |
| Kooyman | 01518 | 01519 | Wooldridge | 00315 | 00315 |
| Kooyman | 01572 | 01661 | Wooldridge | 00317 | 00318 |
| Kooyman | 01669 | 01670 | Wooldridge | 00325 | 00336 |
| Kooyman | 01673 | 01715 | Wooldridge | 00405 | 00410 |
| Kooyman | 01959 | 01959 | Wooldridge | 00426 | 00427 |
| Kooyman | 01969 | 02000 | Wooldridge | 00432 | 00434 |
| Kooyman | 02034 | 02034 | Wooldridge | 00439 | 00478 |
| Kooyman | 02052 | 02053 | Wooldridge | 00483 | 00558 |
| Kooyman | 02056 | 02056 | Wooldridge | 00581 | 00589 |
| Kooyman | 02058 | 02066 | Wooldridge | 00616 | 00631 |
| Kooyman | 02083 | 02085 | Wooldridge | 00633 | 00636 |
| Kooyman | 02105 | 02126 | Wooldridge | 00961 | 00971 |

| | |
|---|---|
| Chad Armstrong Deposition Transcript & Exhibits | 07/27/09 |
| Rebecca Armstrong Deposition Transcript & Exhibits | 07/27/09 |
| Amit Bakshi Deposition Transcript & Exhibits | 07/20/09 |
| Yael Kovo Deposition Transcript & Exhibits | 07/20/09 |
| Alan Chan Deposition Transcript & Exhibits | 06/15/09 |
| Brian Colburn Deposition Transcript & Exhibits | 07/21/09 |
| Sherry Colburn Deposition Transcript & Exhibits | 07/21/09 |
| Kelly Copland Deposition Transcript & Exhibits | 07/09/09 |
| Jason Hill Deposition Transcript & Exhibits | 07/09/09 |
| Patricia French Deposition Transcript & Exhibits | 05/26/09 |
| Keith Galante Deposition Transcript & Exhibits | 05/28/09 |
| Carlos Gonzales Deposition Transcript & Exhibits | 07/23/09 |
| Carlos Gonzales Deposition Transcript & Exhibits | 07/24/09 |
| Martha Gonzales Deposition Transcript & Exhibits | 07/23/09 |
| Patricia Kleiber Deposition Transcript & Exhibits | 05/27/09 |
| Ronald Konrath Deposition Transcript & Exhibits | 05/28/09 |
| Ronald Konrath Deposition Transcript & Exhibits | 05/29/09 |
| Emi Kooyman Deposition Transcript & Exhibits | 07/06/09 |
| Mark Kooyman Deposition Transcript & Exhibits | 07/07/09 |
| Elaine Kooyman Deposition Transcript & Exhibits | 07/07/09 |
| Ron Kooyman Deposition Transcript & Exhibits | 07/08/09 |
| Bryan McMahon Deposition Transcript & Exhibits | 09/24/09 |
| Robin McMahon Deposition Transcript & Exhibits | 09/24/09 |
| Jack McCabe Deposition Transcript & Exhibits | 10/21/09 |
| Mary Mejia Deposition Transcript & Exhibits | 06/16/09 |
| Daniel Neil Deposition Transcript & Exhibits | 07/22/09 |
| Loretta Neil Deposition Transcript & Exhibits | 07/22/09 |
| Liem Nguyen Deposition Transcript & Exhibits | 06/16/09 |
| Liem Nguyen Deposition Transcript & Exhibits | 06/17/09 |

**Exhibit 10:**

**List of Documents Reviewed and/or Relied Upon**

| | |
|---|---|
| Ahn-Dao Tran Deposition Transcript & Exhibits | |
| Linda Palmer Deposition Transcript & Exhibits | 06/17/09 |
| Jacintha Peris Deposition Transcript & Exhibits | 08/27/09 |
| Bart Schroeder Deposition Transcript & Exhibits | 10/05/09 |
| Mary Schroeder Deposition Transcript & Exhibits | 06/18/09 |
| Don Semi Deposition Transcript & Exhibits | 06/18/09 |
| Lorraine Wooldridge Deposition Transcript & Exhibits | 07/28/09 |
| William Wooldridge Deposition Transcript & Exhibits | 07/29/09 |
| | 07/29/09 |
| | |
| Plaintiffs' First Amended Complaint | |
| Sunvest's Answer, Defenses and Affirmative Defenses to Plaintiffs' First Amended Complaint | 04/24/09 |
| | 05/19/09 |
| Defendants' Motion to Dismiss the Complaint and Supporting Memorandum of Law | 01/20/09 |
| Order Denying Defendant's Motion to Dismiss | |
| Order Granting Motion For Protective Order | 03/02/09 |
| Defendant Sunvest's First Set of Interrogatories | 10/29/09 |
| Defendant IMG Academies' First Set of Interrogatories | 03/24/09 |
| IMGA and Sunvest's First Joint Request for Production of Documents to Plaintiffs | 06/03/09 |
| | 03/24/09 |
| Plaintiffs' Motion for Protective Order and Exhibits | |
| Chad and Rebecca Armstrong's Responses and Objections to Defendant Sunvest and IMGA's First Set of Interrogatories | 10/14/09 |
| | 05/18/09 |
| Chad and Rebecca Armstrong's Responses and Objections to IMG Academies, LLP's First Set of Interrogatories | 07/25/09 |
| Amit Bakshi and Yael Kovo's Responses and Objections to Defendant Sunvest's First Set of Interrogatories | 05/13/09 |
| Amit Bakshi and Yael Kovo's Responses and Objections to Defendant IMG Academies, LLP's First Set of Interrogatories | 07/20/09 |
| Alan Chan's Responses and Objections to Defendant Sunvest's First Set of Interrogatories | 05/29/09 |
| Alan Chan's Responses and Objections to IMG Academies, LLP's First Set of Interrogatories | 08/19/09 |
| Brian and Sherry Colburn's Responses and Objections to Defendant Sunvest's First Set of Interrogatories | 05/14/09 |
| Brian and Sherry Colburn's Responses and Objections to Defendant IMG Academies, LLP's First Set of Interrogatories | 07/21/09 |
| Kelly Copland and Jason Hill's Responses and Objections to Defendant Sunvest's First Set of Interrogatories | 05/19/09 |
| Kelly Copland and Jason Hill's Responses and Objections to IMG Academies, LLP's First Set of Interrogatories | 07/09/09 |
| Patricia French's Responses and Objections to Defendant Sunvest's First Set of Interrogatories | 05/14/09 |
| Patricia French's Responses and Objections to IMG Academies, LLP's First Set of Interrogatories | 10/12/09 |
| Patricia French's Responses and Objections to First Joint Request for Production | 04/24/09 |
| Keith Galante's Responses and Objections to Defendant Sunvest's First Set of Interrogatories | 05/20/09 |
| Keith Galante's Responses and Objections to Defendant IMG Academies, LLP's First Set of Interrogatories | 07/30/09 |

**Exhibit 10:**
**List of Documents Reviewed and/or Relied Upon**

| | |
|---|---|
| Carlos and Martha Gonzales' Responses and Objections to Defendant Sunvest's First Set of Interrogatories | 06/02/09 |
| Carlos and Martha Gonzales' Responses and Objections to IMG Academies, LLP's First Set of Interrogatories | 07/23/09 |
| Patricia Kleiber's Responses and Objections to Defendant Sunvest's First Set of Interrogatories | 05/20/09 |
| Patricia Kleiber's Responses and Objections to IMG Academies, LLP's First Set of Interrogatories | 10/05/09 |
| Ron Konrath's Responses and Objections to Defendant Sunvest's First Set of Interrogatories | 05/18/09 |
| Ron Konrath's Responses and Objections to Defendant IMG Academies, LLP's First Set of Interrogatories | 07/30/09 |
| Ron Konrath's Responses and Objections to First Joint Request for Production | 04/26/09 |
| Mark & Emi Kooman Responses and Objections to Defendant Sunvest's First Set of Interrogatories | 05/18/09 |
| Mark & Emi Kooyman Responses and Objections to IMG Academies, LLP's First Set of Interrogatories | 07/06/09 |
| Ron & Elaine Kooyman's Responses and Objections to Defendant Sunvest's First Set of Interrogatories | 05/14/09 |
| Ron & Elaine Kooyman's Responses and Objections to IMG Academies, LLP's First Set of Interrogatories | 07/06/09 |
| Bryan and Robin McMahon's Responses and Objections to Defendant Sunvest's First Set of Interrogatories | 05/13/09 |
| Bryan and Robin McMahon's Responses and Objections to IMG Academies, LLP's First Set of Interrogatories | 09/24/09 |
| Mejia Responses and Objections to Defendant Sunvest's First Set of Interrogatories | 05/19/09 |
| Mejia Responses and Objections to IMG Academies, LLP's First Set of Interrogatories | 10/12/09 |
| Daniel and Loretta Neil's Responses and Objections to Defendant Sunvest's First Set of Interrogatories | 05/14/09 |
| Daniel and Loretta Neil's Responses and Objections to IMG Academies, LLP's First Set of Interrogatories | 07/22/09 |
| Liem Nguyen and Anh-Dao Tran's Responses and Objections to Defendant Sunvest's First Set of Interrogatories | 05/29/09 |
| Liem Nguyen and Anh-Dao Tran's Responses and Objections to Defendant IMG Academies, LLP's First Set of Interrogatories | 07/30/09 |
| Linda Palmer's Responses and Objections to Defendant Sunvest's First Set of Interrogatories | 05/14/09 |
| Linda Palmer's Responses and Objections to IMG Academies, LLP's First Set of Interrogatories | 08/27/09 |
| Mary Schroeder's Responses and Objections to Defendant Sunvest's First Set of Interrogatories | 05/29/09 |
| Mary Schroeder's Responses and Objections to IMG Academies, LLP's First Set of Interrogatories | 08/19/09 |
| Don Semi's Responses and Objections to Defendant Sunvest's First Set of Interrogatories | 05/19/09 |

| **Exhibit 10:** | |
|---|---|
| **List of Documents Reviewed and/or Relied Upon.** | |
| Don Semi's Responses and Objections to IMG Academies, LLP's First Set of Interrogatories | 07/28/09 |
| Bill and Lori Wooldridge's Responses and Objections to Defendant Sunvest's First Set of Interrogatories | 05/18/09 |
| Bill and Lori Wooldridge's Responses and Objections to IMG Academies, LLP's First Set of Interrogatories | 07/28/09 |
| | |
| Colburn Foreclosure Pleadings | |
| Gonzales Foreclosure Pleadings | |
| Schroeder Foreclosure Pleadings | |
| Copland/Hill Foreclosure Pleadings | |
| French Foreclosure Pleadings | |
| Galante 1040 for 2004 (no bates stamp - Ex. 2) | |
| Galante 1040 for 2005 (no bates stamp - Ex. 3) | |
| Galante 1040 for 2006 (no bates stamp - Ex. 5) | |
| Galante 1040 for 2007 (no bates stamp - Ex. 20) | |
| Expert Report of Michael F. O'Rourke | 09/14/09 |
| Expert Report of Michael F. O'Rourke (Revised) | 10/19/09 |
| Expert Report of Kelly Johnson | 09/14/09 |
| Expert Report of Jack McCabe | 09/14/09 |
| Expert Report of Stephen Nostrand | 09/14/09 |
| O'Rourke Workpapers | |
| Nostrand Workpapers | |
| McCabe Workpapers | |
| www.chase.com/chf/mortgage/hrm_other-potential-solutions | |
| www.chase.com/chf/mortgage/hrm_documents | |
| https://www.chase.com/ccpmweb/chf/document/Borrowers_Assistance_Form_Chase_2009.pdf | |
| http://or.occompt.com/recorder/web/login.jsp | |
| JP Morgan Chase Mortgage Document for Alan Chan | 12/20/08 |
| www.myorangeclerk.com/myclerk/ | |
| www.manateepao.com | |
| Condominium Sales Information from the Florida Association of Realtors and the University of Florida Real Estate Research Center | |
| Orlando Sentinel: "Condos sic judges on owners for back fees" | 08/28/09 |
| Stires v. Carnival Corp., No. 6:02CV542, 2003 WL 21356781, at *2 (M.D. Fla. 2003) | |
| Kind v. Gittman, 889 So. 2d 87, 90 (Fla. 4th DCA 2004) | |
| Morgan Stanley & Co., Inc. v. Coleman (Parent) Holdings, Inc. (Fla. 4th DCA 2007) | |
| Christopher Advertising Group, Inc. v. R&B Holding Co., Inc. (Fla. 3d DCA 2004) | |